UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

SUDENGA INDUSTRIES,

INCORPORATED,

Plaintiff and

Counterclaim Defendant,

v.                                                    Case No. 18-2498-DDC

GLOBAL INDUSTRIES, INC.,

Defendant and

Counterclaim Plaintiff.

## MEMORANDUM IN SUPPORT OF PLAINTIFF SUDENGA INDUSTRIES, INCORPORATED'S CROSS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND VALIDITY AND DISMISSAL OF COUNTERCLAIM COUNT VII

Pursuant to Federal Rule of Civil Procedure 56 and D. Kan. Local Rule 56.1, Plaintiff Sudenga Industries Incorporated ("Sudenga") moves for summary judgment of infringement under Counts I-III of its Third Complaint for Patent Infringement (ECF 61) against Defendant Global Industries, Inc. ("Global") as well as for summary judgment of infringement and validity rejecting Global's Counterclaim Counts I-VI (ECF 62).  This motion further seeks dismissal of Global's Counterclaim Count VII.  (ECF 62).  Sudenga's present motion is designated a cross motion in view of Global's pending motion for partial summary judgment.  (ECF 118 and 119).

# <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ iv

Exhibit Index ........................................................................................................ viii

Nature of the Matter and Statements of Fact .......................................................... xv

  I.   Statement of the Nature of Matter Before the Court ...................................... xv

    A.  Infringement of the '823 Patent ................................................................ xv

    B.  Infringement of the '001 Patent ................................................................ xv

    C.  Infringement of the '338 Patent .............................................................. xvi

    D.  Willfulness ............................................................................................... xvi

    E.  Validity of the '823 Patent ....................................................................... xvi

    F.  Validity of the '001 Patent ....................................................................... xvi

    G.  Validity of the '338 Patent ....................................................................... xvi

    H.  Counterclaim for Attorney's Fees ............................................................ xvi

  II.  Plaintiff's Statement of Material Facts ........................................................ xvi

Argument and Authorities........................................................................................ 1

  III.  Introduction ................................................................................................... 1

  IV.  Applicable Law .............................................................................................. 2

    A.  Summary Judgment.................................................................................... 2

    B.  Infringement .............................................................................................. 3

    C.  Validity...................................................................................................... 3

      1.  Burden and Standard of Proof for Validity Challenges............................. 3

      2.  Anticipation and the Requirements to Qualify a Reference as "Prior Art"................. 4

      3.  Obviousness............................................................................................. 7

      4.  Patent "Enablement" and "Written Description" Disclosure Requirements .............. 8

      5.  Priority to Provisional Patent Applications ............................................... 9

  V.  Arguments...................................................................................................... 9

    A.  Global's Accused NexGen 3000 Product Infringes Each of the Patents-in-Suit ........... 10

      1.  Claims 1, 4-19, 21 and 22 of the '338 Patent are Directly, Literally Infringed.......... 10

      2.  Claims 1, 6-8, 10 and 11 of the '001 Patent are Directly, Literally Infringed............ 11

      3.  Claims 1, 6 and 8 of the '823 Patent are Directly, Literally Infringed ...................... 12

    B.  Global's Infringement Was Willful............................................................. 14

C.   Global Cannot Establish by Clear & Convincing Evidence That Any Asserted Claims of the Patents-in-Suit are Invalid ............................................................................................ 15

   1.   The Kaskie Bros. Sale is Not Prior Art Against the Asserted Claims Because There is Written Description Support in Sudenga's Provisional Application ................................. 16

   2.   Global Cannot Establish Invalidity by Clear & Convincing Evidence Based on Patent and Alleged "Printed Publication" References .................................................................. 17

     a.   The Francis Reference in View of Additional References ..................................... 17

     b.   The Chief or Neuero References in View of Lizambard Etc., and Lizambard in View of Additional References ....................................................................................... 19

     c.   The Cantenot Reference (Plus Sudenga I and II).................................................... 21

     d.   The Morillon Reference (Plus Sudenga I and II).................................................... 22

       (1)   The Pantalena Declaration Does Not Establish Morillon as a "Printed Publication" ................................................................................................................ 22

       (2)   Morillon's Substantive Disclosure Fails to Render Any Asserted Claims Invalid............................................................................................................................ 26

     e.   The Denis II Reference (Plus Sudenga I and II) .................................................... 28

     f.   The Denis I Reference ........................................................................................... 29

     g.   Objective Indicia of Nonobviousness .................................................................... 29

VI.   Dismissal of Counterclaim Count VII............................................................................ 29

VII.   Conclusion...................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765 (Fed. Cir. 2018) ........................ 6

*ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572 (Fed. Cir. 1984) ................................... 7

*Allied Tube and Conduit Corp. v. John Maneely Co.*, 125 F. Supp. 2d 987 (D. Ariz. 2000) ... 7, 24

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984) .............. 4, 19, 26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 3

*Arendi SARL v. Apple Inc.*, 832 F.3d 1355 (Fed. Cir. 2016) ................................................ 7, 8, 20

*Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) ........... 8, 9, 17

*Badowski v. U.S.*, 164 F.Supp. 252 (C. Cl. 1958) ................................................................... 7, 23

*BASF Corp. v. SNF Holding Co.*, 955 F.3d 958 (Fed. Cir. 2020) ........................................... 5, 21

*Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064 (Fed. Cir. 2015) ..................................................... 7

*Bilstad v. Wakalopulos*, 386 F.3d 1116 (Fed. Cir. 2004) ....................................................... 8, 16

*Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331 (Fed. Cir. 2016) .......................................... 6

*Cadence Pharms. Inc. v. Excela PharmSci Inc.*, 780 F.3d 1364 (Fed. Cir. 2015) ........................ 4

*CNET Networks, Inc. v. Etilize, Inc.*, 584 F. Supp.2d 1260 (N.D. Cal. 2008) .............................. 24

*Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319 (Fed. Cir. 2009) .................................... 7

*Elan Pharms., LLC v. Sexton*, 421 F. Supp. 3d 1119 (D.Kan. 2019) .......................................... 30

*Engel Inds., Inc. v. Lockformer Co.*, 946 F.2d 1528 (Fed. Cir. 1991) ......................................... 8

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309 (Fed. Cir. 1998) ............. 3, 10

*Ex parte Albert*, 18 USPQ.2d 1325 (BPAI 1984) ....................................................................... 28

*Ex parte Böger*, No. 2017-001586 (PTAB, Aug. 29, 2017) ....................................................... 21

*Freedom Wireless, Inc v. Boston Commc'ns Group, Inc.*, 390 F. Supp. 2d 63 (D.Mass. 2005) .. 23

*Globe Linings, Inc. v. City of Corvalis*, 555 F.2d 727 (9th Cir. 1977) ........................................ 23

*Goss Int'l Americas, Inc. v. Graphic Mgmt. Assocs., Inc.*, 739 F. Supp. 2d 1089 (N.D. Ill. 2010)..
.................................................................................................................................. 7, 24

*Graham v. John Deere Co. of Kan. City*, 383 U.S. 1 (1966) ................................................ 7, 8, 29

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. ___, 136 S. Ct. 1923 (2016) ............................ 14

*Hilgraeve, Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964 (E.D. Mich. 2003) .............................. 24

*Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357 (Fed. Cir. 2018) ...................................... 9

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (Fed. Cir. 1986) .................... 4, 21

*Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336 (Fed. Cir. 2011) ................................. 9

*Impax Labs. Inc. v. Lannett Holdings Inc.*, 893 F.3d 1372 (Fed. Cir. 2018) .................................. 8

*In re Bayer*, 568 F.2d 1357 (CCPA 1978) ...................................................................... 6

*In re Cronyn*, 890 F.2d 1158 (Fed. Cir. 1989) .............................................................. 5

*In re Fisher*, 427 F.2d 833 (CCPA 1970) ............................................................... 8, 16

*In re Hall*, 781 F.2d 897 (Fed. Cir. 1986) ................................................................... 6

*In re Jung,* 637 F.3d 1356 (Fed. Cir. 2011) ............................................................... 28

*In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006) ................................................................. 19

*In re Klopfenstein*, 380 F.3d 1345 (Fed. Cir. 2004) ................................................ 6, 23

*In re Linnert*, 309 F.2d 498 (CCPA 1962) .................................................................. 19

*In re Lister*, 583 F.3d 1307 (Fed. Cir. 2009) ............................................................... 5

*In re Rasmussen*, 650 F.2d 1212 (CCPA 1981) ............................................................. 9

*In re Van Os*, 844 F.3d 1359 (Fed. Cir. 2017) ........................................................ 8, 20

*In re Wyer*, 655 F.2d 221 (CCPA 1981) ...................................................................... 6

*Ingersoll-Rand Co. v. Brunner & Lay, Inc.*, 474 F.2d 491 (5th Cir. 1973) ...................... 4, 16, 21

*Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999) ............... 9, 17

*Kannady v. City of Kiowa,* 590 F.3d 1161 (10th Cir. 2010) .......................................... 3

*Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376 (Fed. Cir. 2001) .................... 4, 26

*KSR Int'l Co. v. Teleflex Inc,* 550 U.S. 398 (2007) ...................................................... 7

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452 (Fed. Cir. 1984) ........................................................................................................ 21

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996) ............................. 26

*Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363 (Fed. Cir. 2009)................. 9, 16

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ............................................... 3, 4

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002) .................. 5

*Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306 (Fed. Cir. 2003)....................... 9

*N. Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931 (Fed. Cir. 1990) ............................. 7, 23

*Neonatal Prod. Group, Inc. v. Shields*, 312 F. Supp. 3d 1010 (D.Kan. 2018) ................... 3

*Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008) ............................ 5, 22, 26

*New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290 (Fed. Cir. 2002)................. 9

*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997)......................... 5

*Open Text SA v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 4940798 (N.D. Cal. Aug. 19, 2015) *appeal dismissed* No. 15-2052 (Fed. Cir., April 4, 2016) ........................................ 24

*Radio Corp. of Am., Inc. v. Radio Eng'g Labs., Inc.*, 293 U.S. 1 (1934) ........................ 3, 4, 16, 20

*Ralston Purina Co. v. Far-Mar-Co, Inc.*, 586 F.Supp. 1176 (D. Kan. 1984), *aff'd in part and rev'd in part on other grounds*, 772 F.2d 1570 (Fed. Cir. 1985)................................................. 5

*Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)............................................................. 14

*Samsung Elecs. Co., Ltd. v. Infobridge Pte. Ltd.*, 929 F.3d 1363 (Fed. Cir. 2019) ...................... 6

*Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253 (Fed. Cir. 2012)................................................. 4

*Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524 (Fed. Cir. 1987), *cert. denied,* 484 U.S. 954 (1987) ...................................................................................................................................... 8

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186 (Fed. Cir. 2008)..................................... 23

*Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed. Cir. 1983) ......................................... 8, 29

*Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002) ................................. 25

*Transocean Offshore Deepwater Drilling Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340 (Fed. Cir. 2012) ...................................................................................................................................... 29

*Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989 (Fed. Cir. 2000) .................................. 8

*United States v. Telectronics, Inc.*, 857 F.2d 778 (Fed. Circ. 1988)............................................... 8

*Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) ................................................. 9, 17

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016) ................................................. 15, 18

**Constitutional Provisions**

Article III .......................................................................................................................................... 29

**Statutes**

35 U.S.C. § 101 .............................................................................................................................. lxxix

35 U.S.C. § 102 (pre-AIA)............................................................................................................. passim

35 U.S.C. § 103 (pre-AIA)............................................................................................................. xlv, 7

35 U.S.C. § 112 (pre-AIA)............................................................................................................. xlv, 8, 9

35 U.S.C. § 119 ................................................................................................................................... 9

35 U.S.C. § 120 ................................................................................................................................... 9

35 U.S.C. § 135 (pre-AIA)............................................................................................................... 21

35 U.S.C. § 271 ...................................................................................................................... xv, xvi, 3

35 U.S.C. § 284 ................................................................................................................................... 1

**Regulations**

37 C.F.R. § 1.53 .................................................................................................................................. 9

37 C.F.R. § 1.9 ............................................................................................................ 9

**Rules**

Fed. R. Civ. P. 54 ...................................................................................................... 30

Fed. R. Civ. P. 56 ................................................................................................... i, 3

**Other Authorities**

USPTO, "Quick Path Information Disclosure Statement (QPIDS) Pilot Program," 77 Fed. Reg. 27443 (May 10, 2012) ........................................................................... 27

USPTO, Manual of Patent Examining Procedure § 2164.03 (9th ed., Rev. 08.2017, Jan. 2018) .................................................................................................................... 8

USPTO, Manual of Patent Examining Procedure § 608.01 (9th Ed., Rev. 08.2017, Jan. 2018) .................................................................................................................. 26

USPTO, Manual of Patent Examining Procedure § 608.02 (9th ed., Rev. 08.2017, Jan. 2018) ..................................................................................................... xxii, lxxv

USPTO, Manual of Patent Examining Procedure § 706 (9th ed., Rev. 08.2017, Jan. 2018) ............................................................................................................... 16, 28

## EXHIBIT INDEX

*Exhibits Previously Submitted With Global's Motion for Partial Summary Judgment (ECF 118 and 119) Cited Herein by Sudenga (but not re-filed herewith):*

ECF 119-1 – April 10, 2020 Declaration of Douglas Robinson

Ex. 1 – ECF 119-2 – U.S. Pat. No. 8,616,823 ("the '823 Patent"), including Certificate of Correction

Ex. 2 – ECF 119-3 – U.S. Pat. No. 9,206,001 ("the '001 Patent")

Ex. 3 – ECF 119-4 – U.S. Pat. No. 10,017,338 ("the '338 Patent")

Ex. 4 – ECF 119-5 – Sudenga's Original Infringement Contentions (without original Claim Charts)

Ex. 5 – ECF 119-6 – Sudenga's Amended Infringement Contentions Claim Charts

Ex. 6 – ECF 119-7 – Excerpts from Transcript of March 7, 2019 30(b)(6) Deposition of Sudenga, Ronald Stewart Designee

Ex. 7 – ECF 119-8 – U.S. Pat. App. Pub. No. 2010/0239399 ("the '399 Publication")

Ex. 8 – ECF 119-9 – U.S. Provisional Pat. App. Ser. No. 61/306,322 (Sudenga's "PPA" or "the '322 Provisional")

Ex. 9 – ECF 119-10 – Global's "NexGen 3000 Klean Sweep Auger Owner's & Operator's Manual" Publication No. 1044890 (effective Oct. 1, 2017)

Ex. 10 – ECF 119-11 – December 24, 2019 Declaration of Valerio Pantalena ("Pantalena Decl.") with Exhibit A ("Morillon" reference [also referred to as the "Frame Manual"] and version of Pantalena email chain without black box)

Ex. 12 – ECF 119-13 – Amended Appendix A Claim Chart from Global's Amended Invalidity Contentions

Ex. 13 – ECF 119-14 – Lizambard (EP 1 516 836 A1) with English machine translation

Ex. 14 – ECF 119-15 – "Chief" Reference (GII0000316)

Ex. 15 – ECF 119-16 – Sudenga's Second Supplemental Answers to Global's Second
Interrogatories

Ex. 18 – ECF 119-19 – (New) Appendix B1 Claim Chart from Global's Amended Invalidity
Contentions

Ex. 19 – ECF 119-20 – U.S. Pat. App. Pub. No. 2005/0263372 ("the '372 Publication" or
"Sudenga II")

Ex. 20 – ECF 119-21 – Herchen Declaration with Appendix A ("Neuero" brochure and English
translation), Appendix B (annotated photographs), Appendix C (excerpts
from 2010 price book in German only)

Ex. 22 – ECF 119-22 – (New) Appendix H Claim Chart from Global's Amended Invalidity
Contentions

Ex. 23 – ECF 119-24 – Excerpts from Sudenga's Supplemental Answers to Global's First
Interrogatories

Ex. 24 – ECF 119-25 – Declaration of Frank Loeffler with Exhibit A (Loeffler CV)

Ex. 25 – ECF 119-26 – Color copy of Neuero Brochure

*Exhibits Relied Upon Here That Were Previously Submitted by Sudenga In Response to Global's*
*Motion for Partial Summary Judgment (but not re-filed herewith):*

ECF 126-1 – April 30, 2020 Declaration of Austen Zuege

Ex. A – ECF 126-2 – Excerpts from Global's Amended Invalidity Contentions

Ex. B – ECF 126-3 – April 29, 2020 Declaration of Dr. Carol L. Jones with Attachment J1 (Jones CV)

Ex. C – ECF 126-4 – Additional Excerpts from Transcript of March 7, 2019 30(b)(6) Deposition of Sudenga, Ronald Stewart Designee [Other pages from this transcript were previously provided as Global's Ex. 6 (ECF 119-7)]

Ex. D – ECF 126-5 – Sudenga's Original '823 Patent, '001 Patent, and '338 Patent Infringement Contentions Claim Charts

Ex. E – ECF 126-6 – Global's Answers to Sudenga's Second Set of Interrogatories

Ex. F – ECF 126-7 – Excerpts from '338 Patent USPTO File History

Ex. G – ECF 126-8 – U.S. Pat. No. 10,518,989 ("the '989 Patent")

Ex. H – ECF 126-9 – Excerpts from '989 Patent USPTO File History

Ex. I –  ECF 126-10 – Pantalena Email Chain with Black Box at Top

Ex. J –  ECF 126-11 – Additional Translation of Lizambard

Ex. K – ECF 126-12 – April 28, 2020 Declaration of Alan G. Hoogestraat With Attachments H1 (engineering drawings dated June 3, 2009; redacted version of Attachment H1 filed as ECF 126-12 and unredacted version of Attachment H1 filed under seal as ECF 130), H2 (redacted copies of additional documentation of conception), H3 (Sudenga's " 12" Industrial Sweep Series II Owners Manual " version G7AG from 2009), and H4 (photos GII0001455 to GII0001458 of Sudenga's patented D150 bin sweep product taken by Global's engineer at 2013 Louisville trade show)

Ex. L – ECF 127 – Global's "NexGen 3000 Klean Sweep Auger Owner's & Operator's Manual" Publication No. 1044890 (Effective Aug. 15, 2014)

x

Ex. M –    ECF 126-13 – Excerpts from Sudenga's Supplemental Answers to Global's First Set of Interrogatories

Ex. N – ECF 126-14 – USPTO Official Filing Receipt for U.S. Provisional Patent App. Ser. No. 61/306,322 (Sudenga's "PPA" or "the '322 Provisional")

Ex. O – ECF 126-15 – April 28, 2020 Declaration of Ronald Stewart with Attachment S1 (redacted copy of Confidential Settlement and Patent License Agreement)

Ex. P – ECF 126-16 – Redacted Sales Invoice and Shipping Records for Kaksie Bros. Inc. 2009 Sale (SII004470-SII004473)

Ex. Q – ECF 126-17 – Excerpts from '001 Patent USPTO File History

Ex. R – ECF 126-18 – Francis, U.S. Patent No. 3,449,840

Ex. S – ECF 126-19 – Global's Answers to Sudenga's First Set of Requests for Admission

Ex. T – ECF 126-20 – Excerpts from Transcript of September 4, 2019 30(b)(6) Deposition of Global, Craig Minton Designee

Ex. U – ECF 126-21 – Global's Answers to Sudenga's Second Set of Requests for Admission

Ex. V – ECF 126-22 – November 7, 2018 Email from Frank Loeffler

Ex. W –    ECF 126-23 – Redacted Copy of Global's January 9, 2014 Engineering Project Status Spreadsheet (GII0009010)

Ex. X – ECF 126-24 – Sudenga Advertising/Promotional Materials from Global's Engineering Files

Ex. Y – ECF 126-25 – Photo of Portion of Accused NexGen 3000 Bin Sweep Product (GII0000023)

*Exhibits Newly Submitted Herewith:*

July 1, 2020 Declaration of Austen Zuege

Ex. AA – Global's Amended Invalidity Contentions (Jan. 29, 2020)

Ex. AB –Appendix B2 Claim Chart from Global's Amended Invalidity Contentions

Ex. AC – Amended Appendix D Claim Chart from Global's Amended Invalidity Contentions

Ex. AD – Amended Appendix E Claim Chart from Global's Amended Invalidity Contentions

Ex. AE – Amended Appendix F Claim Chart from Global's Amended Invalidity Contentions

Ex. AF – Amended Appendix G Claim Chart from Global's Amended Invalidity Contentions

Ex. AG – Assignment and USPTO Recordation Documents for the Patents-in-Suit

Ex. AH – Copies of Sudenga Virtual Patent Marking Web Page and Product Decal

Ex. AI – Excerpts from Sudenga Product Manuals Showing Patent Marking Decal Placement

Ex. AJ – January 28, 2016 Demand Letter Sent by Sudenga to Global

Ex. AK – September 4, 2018 Email between Counsel for the Parties

Ex. AL – March 20, 2017 Demand Letter to Global, With Executed Domestic Return Receipt

Ex. AM – January 27, 2020 Demand Letter from Sudenga's Counsel to Global's Counsel, with Cover Email and Delivery Confirmation

Ex. AN – Global's First Supplemental Responses to Sudenga's First Set of Interrogatories

Ex. AO – Redacted Excerpts of Acquisition Agreement

Ex. AP – April 12, 2017 Email from Mr. Ryan Kipp of AGI

Ex. AQ – Redacted March 24-25, 2015 Email Chain

Ex. AR – Excerpts from Global's "Hutchinson Bin Unloading Systems" Brochure (2016)

Ex. AS – Redacted Copy of Covenant Not to Sue

Ex. AT – Global's Responses to Sudenga's Third Set of Interrogatories

Ex. AU – Second Declaration of Dr. Carol L. Jones with Attachment J1 (Jones CV)

Ex. AV – December 7, 2018 Email Chain

Ex. AW – Redacted April 30 and May 1, 2014 Email Chain

Ex. AX – Global Sales/Marketing Document

Ex. AY – Redacted copy of Spreadsheet of Global's NexGen 3000 Sales (Jan. 26, 2019)

Ex. AZ – Additional Excerpts from Transcript of September 4, 2019 30(b)(6) Deposition of
Global, Craig Minton Designee (Other Excerpts from this transcript included in Ex.
T [ECF 126-20])

Ex. BA – March 31 and April 1, 2017 Email Chain and Additional April 1, 2017 Email

Ex. BB – June 12 and 20, 2017 Email Chain

Ex. BC – January 30, 2018 Email Chain

Ex. BD – Additional Excerpts from Sudenga's Supplemental Answers to Global's First Set
of Interrogatories (other excerpts included as Ex. M [ECF 126-13])

Ex. BE – Excerpts from Global's Responses to Sudenga's Second Set of Requests for
Production

Ex. BF – Global's Original Invalidity Contentions and Document Disclosure (Feb. 8, 2019)

Ex. BG – February 14, 2020 Email Chain Between Counsel for the Parties

Ex. BH – Redacted March 28, 29 and April 10, 2018 Email Chain

Ex. BI - Copy of *Ex parte Böger,* No. 2017-001586 (PTAB, Aug. 29, 2017)

Ex. BJ – Excerpts from Global's (Original) Responses to Sudenga's First Set of

      Interrogatories

Ex. BK – Screenshots of YouTube Web Pages for Third-Party Videos of Global's NexGen

      3000 Product With the Optional Tru-Klean chain & paddle accessory

Ex. BL – April 3 and 11 and May 4 and 12, 2017 Email Chain

## NATURE OF THE MATTER AND STATEMENTS OF FACT

## I.      STATEMENT OF THE NATURE OF MATTER BEFORE THE COURT

The present action involves allegations of patent infringement relating to bin sweep technology with utility to the agricultural industry.  Plaintiff Sudenga Industries, Inc. ("Sudenga") has alleged that defendant Global Industries, Inc.'s ("Global's") Accused Product, referred to as both the "Hutchinson NexGen 3000 Series Commercial Sweep" and "NexGen 3000 Klean Sweep Auger," infringes one or more claims of each of U.S. Patent Nos. 8,616,823 ("the '823 Patent"); 9,206,001 ("the '001 Patent); and 10,017,338 ("the '338 Patent") (collectively, the "Patents-in-Suit")—each of which is entitled "Bin Sweep Collector Ring Assembly"—and the Global's infringement was willful.  (ECF 61).  More particularly, Sudenga is asserting that Global's Accused Product infringes claims 1, 6, and 8 of the '823 Patent, claims 1, 6-8, 10, and 11 of the '001 Patent, and claims 1, 4-19, 21, and 22 of the '338 Patent.  (Ex. 5).  The specific issues presented in the present cross motion are the following.

### A.      Infringement of the '823 Patent

Is Sudenga entitled to summary judgment of infringement of the '823 Patent based on Global's literal infringement of one or more of claims 1, 6, and/or 8 of the '823 Patent by making, using, selling, offering for sale, or importing the Accused Product in violation of 35 U.S.C. § 271(a)?

### B.      Infringement of the '001 Patent

Is Sudenga entitled to summary judgment of infringement of the '001 Patent based on Global's literal infringement of one or more of claims 1, 6-8, 10, and/or 11 of the '001 Patent by making, using, selling, offering for sale, or importing the Accused Product in violation of 35 U.S.C. § 271(a)?

### C.     Infringement of the '338 Patent

Is Sudenga entitled to summary judgment of infringement of the '338 Patent based on Global's literal infringement of one or more of claims 1, 4-19, 21, and/or 22 of the '338 Patent by making, using, selling, offering for sale, or importing the Accused Product in violation of 35 U.S.C. § 271(a)?

### D.     Willfulness

Was Global's infringement of the Patents-in-Suit willful?

### E.     Validity of the '823 Patent

Are asserted claims 1, 6, and 8 of the '823 Patent valid over each ground set forth in Global's Amended Invalidity Contentions?

### F.     Validity of the '001 Patent

Are asserted claims 1, 6-8, 10, and 11 of the '001 Patent valid over each ground set forth in Global's Amended Invalidity Contentions?

### G.     Validity of the '338 Patent

Are asserted claims 1, 4-19, 21, and 22 of the '338 Patent valid over each ground set forth in Global's Amended Invalidity Contentions?

### H.     Counterclaim for Attorney's Fees

Does Global lack Article III standing for its Counterclaim Count VII for attorney's fees?

## II.     PLAINTIFF'S STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1(a), Sudenga sets forth the following statements of material facts ("SOF").  For clarity, in light of Global's pending summary judgment motion, Sudenga preserves the numbering of the parties' prior SOF 1-144 and begins its newly-presented SOF at number 145.  Sudenga's prior SOF 68-144 are reproduced here for ease of reference.  (*See* ECF

126).  Sudenga further notes that some of SOF 68-144 cite or otherwise refer to Global's prior

SOF 1-67 (which are not reproduced herein) as well as exhibits previously submitted in support of

or in opposition to Global's prior motion for summary judgment (which are not duplicatively

resubmitted herewith).  (*See* ECF 119 and 126).

*Statements of Facts Reproduced from Sudenga's Prior Response Brief (ECF 126):*[1]

68.     Sudenga provided "amended" infringement contention claim charts to Global on

Dec. 31, 2019 that were captioned "amended" and which omitted claims that were no longer being

asserted but were substantively identical to Sudenga's original infringement contentions (served

Nov. 16, 2018) with regard to the remaining asserted claims, namely claims 1, 6, and 8 of the '823

Patent, claims 1, 6-8, 10, and 11 of the '001 Patent, and claims 1, 4-19, 21, and 22 of the '338

Patent.  (Ex. 5; Ex. D).  A table with excerpts from the original and amended infringement

contentions charts shown side-by-side for the clause "a pivot stand attached to a top surface of the

floor grate, the pivot stand defining a vertical pivot axis" is provided here, which shows the same

annotated images from pages P-3, 14 and 17 of Global's 2014 product manual (Ex. L):

---

[1] Global previously responded to SOF 68-144 in its Reply Brief (ECF 132), of which some SOF responses were the subject of Sudenga's Motion to Strike (ECF 133).  Sudenga does not believe that Global can alter its previous responses to SOF 68-144 as a matter of right but also that Global need not specifically reproduce its prior responses to SOF 68-144 when responding to the instant cross motion.  It is further noted that some new footnotes are added here noting inadvertent typographical errors in original SOF 68-144.



69.     The parties' different views on the level of skill of a person of ordinary skill in the

relevant art do not have any material impact on the parties' (and their experts') respective positions.

(SOF 31; Ex. 24 at ¶ 15; Ex. B at ¶ 9).

70.     The subject matter of each of the asserted claims, as well as the subject matter disclosed in the '322 Provisional, pertains to predictable arts.  (Exs. 1-3 and 8; Ex. B at ¶ 13). More particularly, the subject matter of each asserted claim and the '322 Provisional pertains to predictable mechanical, electrical, and/or electromechanical arts.  (Id.).

71.     Alan Hoogestraat conceived of the inventions disclosed in U.S. Provisional Patent Application Ser. No. 61/306,322 ("the '322 Provisional" or "PPA") and claimed in the Patents-in-Suit no later than June 3, 2009.  (Ex. K at ¶¶ 7-9; Ex. M, pp. 3-6, 8 and 9; *see also* Exs. 1-3 and 8; Ex. N).  Mr. Hoogestraat was and still is a design engineer employed by Sudenga.  (Ex. K at ¶¶ 2 and 7).

72.     U.S. Provisional Patent Application Ser. No. 61/306,322 ("the '322 Provisional" or "PPA") describes disclosed inventions with reference to knowledge available to those of ordinary skill in the art, including comparison and contrast with at least one prior art bin sweep device.  (Ex. 8, ¶¶ 2-6, FIGS. 1 and 2; Ex. B at ¶¶ 13-20; Ex. C, pp. 149-151).

73.     The phrase "attached to a top surface" does not literally appear in the '322 Provisional.  (Ex. 8; *see also* Ex. B at ¶ 16)).

74.     At the time the '322 Provisional was filed, on February 19, 2010, many types or embodiments of sweep mechanisms or linear conveyors for moving solid material were known to persons of ordinary skill in the relevant art pertaining, included an auger with flighting, a chain with paddles, a belt, a cleated belt, or the like.  (Ex. 7, ¶¶ 31 and 36; Ex. 6 at 38:8-23; Ex. B at ¶ 20; *see also* Ex. B at ¶¶ 18 and 19).

75.     A person of ordinary skill in the art at the time of filing of the '322 Provisional would have understood an auger with flighting, a chain with paddles, a belt, a cleated belt, or the like to be species falling within the genus of a "sweep mechanism" or "linear conveyor", where a

"sweep mechanism" or "linear conveyor" is "a mechanism for moving solid material." (ECF 102, p. 16; Ex. 7, ¶¶ 31 and 36; Ex. 6 at 38:8-23; Ex. B at ¶ 20; *see also* Ex. B at ¶¶ 18 and 19; SOF 1, 17, 30, and 31).

76.     A person of ordinary skill in the art at the time of filing of the '322 Provisional would have recognized support in Sudenga's PPA for a pivot pipe or stand "extending above a top surface of the floor grate" as recited in asserted claims of the '001 Patent and '338 Patents. ECF 102, p. 16; Ex. B at ¶¶ 15-17.

77.     The Patents-in-suit each claim priority to the '322 Provisional; claims 1, 6, and 8 of the '823 Patent, claims 1, 6-8, 10, and 11 of the '001 Patent, and claims 1, 4-19, 21, and 22 of the '338 Patent each are sufficiently supported by disclosures in the '322 Provisional; and claims 1, 6, and 8 of the '823 Patent, claims 1, 6-8, 10, and 11 of the '001 Patent, and claims 1, 4-19, 21, and 22 of the '338 Patent are each entitled to the February 19, 2010 filing date of the '322 Provisional. (Exs. 1-3, front pages; Ex. 4 at pp. 5-7; Ex. 8; Ex. B at ¶¶ 13-20; Ex. N; *see also* SOF 1 and 17; Ex. F at SII003697, SII003701; Ex. H at SII008158, SII008197, SII008278, SII008281-82, SII008303-04).

78.     Global produced an Owner's & Operator's Manual to fulfill the requirement of Patent Local Rule 3.4(a) to produce documents sufficient to show the operation of any aspects or elements of the accused instrumentality, and has relied on such a manual in its briefing on the present motion. (Ex. 9; SOF 25-28). As such, Global's Owner's & Operator's Manuals for the accused product are reliable sources of information about technical characteristics and operation of the accused product. (Id.; Ex. L). Global has issued multiple versions of the Owner's & Operator's Manual for the accused product. (Ex. 9; Ex. L).

79. Sudenga has issued multiple versions of the manual for its "Series II" bin sweep product. (Ex. K at ¶ 13 and Attachment H3). For instance, version G7AG of Sudenga's " 12" INDUSTRIAL SWEEP SERIES II OWNERS MANUAL " explicitly disclosed an above-floor slip ring and housing assembly while earlier versions of the "Series II" bin sweep owner's manual did not include any disclosures related to a collector ring (or slip ring). (Id.).

80. Sudenga has sold and offered for sale different products under its "Series II" product/brand name that (a) had an above-floor collector ring assembly and embodied the subject matter of the asserted claims of the Patents-in-Suit and also (b) that lacked an above-floor collector ring assembly and did not fall within claims of the Patents-in-Suit. (Ex. O at ¶ 5; *see also* Ex. C, pp. 18-19 and Ex. 6, pp. 41-42; Ex. K Attachment H2).

81. Sudenga diligently worked to reduce to practice the inventions disclosed in the '322 Provisional and recited in the asserted claims of the Patents-in-Suit in the summer of 2009 by building a prototype bin sweep device from engineering specifications prepared by Alan Hoogestraat as of June 3, 2009. (Ex. K, at ¶¶ 7-12; Ex. M, pp. 3-6, 8, 9 and 20-22; *see also* SOF 71). Mr. Ron Bechler, at that time a Sudenga Research & Development Specialist, then fabricated a bin sweep prototype embodying the inventions disclosed in the '322 Provisional and recited in the asserted claims of the Patents-in-Suit prior to October 1, 2009 according to Mr. Hoogestraat's design specifications dated June 3, 2009. (Ex. K, at ¶¶ 7-12 and Attachments H1 and H4; Ex. M, pp. 3-6, 8, 9 and 20-22; *see also* Ex. P).

82. The Sudenga prototype bin sweep fabricated by Mr. Bechler from Mr. Hoogestraat's June 3, 2009 design specifications was sold to Kaskie Bros. Inc. ("Kaskie Bros.") on September 11, 2009 and then shipped to Kaskie Bros. on October 1, 2009. (Ex. P; Ex. M, pp. 4-5, 8, 9, and 20-22; SOF 23; *see also* SOF 81; Ex. G, pp. 1-2; Ex. H at SII008160, SII008193-94,

SII008197, SII008278, SII008281-82, SII008303-04).  The sale in September 2009 and shipment in early October 2009 of the Sudenga prototype to Kaskie Bros. constituted sale of a device that actually reduced to practice of the subject matter of the currently-asserted claims of the Patents-in-Suit.  (Ex. P; Ex. K at ¶¶ 9-11; Ex. M, pp. 4-5, 8, 9, and 20-22; SOF 23; *see also* SOF 79 and 81).

83.     Mr. Hoogestraat invented the subject matter disclosed in the '322 Provisional and recited in the asserted claims of the Patents-in-Suit before November of 2009.  (Ex. K at ¶¶ 7-11 and Attachments H1-H3; SOF 71, 81, and 82).

84.     The September 11, 2009 sale to Kaskie Bros. was less than one year before the filing date of the '322 Provisional.  (SOF 23; Ex. P; Ex. N; *see also* Ex. 8; Ex. G, pp. 1-2; Ex. H at SII008160, SII008193-94, SII008197, SII008278, SII008281-82, SII008303-04).  The critical date under pre-AIA 35 U.S.C. § 102(b) for any claims having priority to the February 19, 2010 filing date of the '322 Provisional is February 19, 2009.  (Ex. N; *see also* Exs. 1-3, front pages; Ex. 8).

85.     Sudenga's electronic records of the 2009 prototype sale to Kaskie Bros. were lost in a computer hard drive crash in late 2010 or early 2011.  (Ex. C, p. 75).  When filing the Patents-in-Suit and when commencing the present lawsuit, Sudenga believed that the sale to Kaskie Bros. less than one year before the filing of the '322 Provisional did not affect its ability to file the Patents-in-Suit and did not impact the validity of the claims of the Patents-in-Suit.  (Id. at pp. 146-151).

86.     The U.S. Patent & Trademark Office ("USPTO") previously considered Morillon, Chief, Lizambard, and the '372 Publication during examination of the application for the asserted '338 Patent, along with additional prior art references cited in the application for the asserted '338

Patent or in a parent application (including all art previously cited in the applications for the '823 Patent and the '001 Patent). (Ex. 1 at p. 1; Ex. 2 at pp. 1-2; Ex. 3 at pp. 1-2; Ex. F at SII3703, SII003706-07; MPEP § 609.02 (I) and (II)(A)(2)). Furthermore, the USPTO also considered a claim chart prepared by Global's counsel (relating to the '823 Patent and the '001 Patent) during examination of the application for the '338 Patent and assertions by Global's counsel regarding publication dates of non-patent literature. (Ex. 3 at p. 1; Ex. F at SII003703, SII003707, and SII003774-3899). When allowing the grant of the '338 Patent, the Notice of Allowance stated, "the prior art does not include . . . a housing which convers at least a top of the collector ring . . . as recited in the claims." (Ex. F at SII003697).[2]

87. U.S. Patent No. 10,518,989 ("the '989 Patent"), entitled "Bin Sweep Collector Ring Assembly," was granted on December 31, 2019 to Sudenga and was assigned at issuance to Sudenga. (Ex. G, pp. 1-2). Alan Hoogestraat is the sole named inventor of the '989 Patent, which claims priority to the '338 Patent, the '001 Patent, the '823 Patent, and the '322 Provisional. (Ex. G, pp. 1-2). The '989 Patent is family related to the Patents-in-Suit through shared priority claims. (Id.; Exs. 1-3 at front pages).

88. The USPTO previously considered the Kaskie Bros. 2009 sale, Morillon, Chief, Lizambard, and the '372 Publication during examination of the application for the '989 Patent, along with additional prior art references cited in the application for the '989 Patent or in a parent application (including all art previously cited in the applications for the '823 Patent, the '001 Patent, and the '338 Patent). (Ex. 1 at p. 1; Ex. 2 at pp. 1-2; Ex. 3 at pp. 1-2; Ex. G, pp. 1-2; Ex. H at SII008132-34, SII008160, SII008169, SII008189, SII008193-94, SII008197, SII8278. SII008281-82, SII008303-04; MPEP § 609.02 (I) and (II)(A)(2)). Furthermore, the USPTO also

---

[2] The original quoted text actually used the word "covers" not "convers".

considered Global's original Invalidity Contentions and accompanying original invalidity claim charts from the present litigation (relating to the '823 Patent, the '001 Patent, and the '338 Patent), as well as another January 2019 claim chart prepared by Global's attorneys, during examination of the application for the '989 Patent.  (Ex. G, pp. 1-2; Ex. H at SII008169, SII008193-94, SII008278, SII008281-82, SII008303-04).  When allowing the grant of the '989 Patent, the Notice of Allowance stated, "the prior art does not include . . . a housing which convers at least a top of the collector ring as recited in the claims."  (Ex. H at SII008160). Subsequent to allowance of the application for the '989 Patent, the examiner stated that additional materials, including a new (undated, second) declaration from Valerio Pantalena, "had no adverse effect on patentability." (Ex. H at SII008132-34).[3]

89.    Global has refused to admit that the Patents-in-Suit are valid over art previously considered by the USPTO.  (Ex. S, pp. 1-3).

90.    Alan Hoogestraat was not aware of the company Morillon SAS, the Morillon reference, or a Morillon "Bin Sweeper Spirogyre for the discharge of the residual cone S 210" product prior to the commencement of the present litigation.  (Ex. K at ¶ 15; *see also* Ex. F at SII003895-99).

91.    Sudenga's expert witness, Dr. Carol Jones, was not aware of the company Morillon SAS or a Morillon "Bin Sweeper Spirogyre for the discharge of the residual cone S 210" prior to receiving copies of materials produced by Global during the pendency of the present litigation. (Ex. B at ¶ 21).

92.    Global lacks any evidence that a Morillon "Bin Sweeper Spirogyre for the discharge of the residual cone S 210" product was made, sold, offered for sale, or publicly used in

---

[3] The original quoted text actually used the word "covers" not "convers".

the United States (i.e., in this country) more than one year prior to February 18, 2011 or more than one year prior to February 19, 2010.  (Ex. S, p. 4).

93.     Multiple pages of the Morillon reference carry a proprietary notice that "it mustn't be copied or published without our approval."   (Ex. 10 at GII0029305-06, GII0029328, GII0029335; Ex. S, pp. 4-5; *see also* Ex. T, pp. 155-156).  At least one other similar notice also appears on Morillon in a language other than English.  (Ex. 10 at GII0029315, GII0029339; Ex. B at ¶ 22; *see also* Ex. 15, pp. 39-48).

94.     Both Sudenga and Global mark proprietary, internal engineering drawings with notices regarding the proprietary status of such documents.  (Ex. K at Attachment H1; Ex. U, pp. 2 and 4; *see also* Ex. U, p. 3).   Such markings constitute protective measures that restrict copying, distribution, or the like.  (Ex. K at Attachment H1; Ex. U, pp. 2 and 4).

95.     Aside from Morillon, other bin sweep product manuals of record—including those from Sudenga, Global, and GSI Group—lack any protective measures that restrict copying, distribution, or the like.  (Ex. 9; Ex. B at ¶ 23; Ex. K at Attachment H3; Ex. L; Ex. U, pp. 3-5; ECF 77-9).

96.     Morillon carries at least one restriction or protective measure against copying or publication.  (Ex. 10 at GII0029305-06, GII0029315, GII0029328, GII0029335; Ex. 15, pp. 39-48; Ex. B at ¶¶ 22 and 23; *see also* Ex. B at ¶ 24; SOF 93-95).

97.     The Pantalena Decl. (Ex. 10) does not establish approval, authorization, or permission from Morillon SAS to copy or publish the Morillon reference.  (*See* Ex. 10 and its accompanying Exhibit A at GII0029353-55).

98.     The Pantalena Decl. (Ex. 10) does not provide corroboration for some or all of the statements in its paragraphs 2-4, and 6-9.  (*See* Ex. 10 ¶¶ 2-4 and 6-9 and accompanying Exhibit A).

99.     The Pantalena Decl. does not provide or attach any corroborating evidence for the assertion that "we were working with a customer in Iran to sell that customer a Bin Sweep Spyrogyre for the discharge of the residual cone, model S210" as referred to in paragraph 2.  (*See* Ex. 10 and its accompanying Exhibit A at GII0029353-55).

100.    Frame S.p.A. was not an end user but was more like a distributor or reseller of products manufactured by Morillon SAS outside the United States.  (Ex. 10, ¶¶ 2 and 4; SOF 92).

101.    Paragraph 3 of the Pantalena Decl. does not provide any dates for the "various trade shows" referenced, nor is any corroborating evidence of such "various trade shows" provided or attached.  (Ex. 10, ¶ 3 and accompanying Exhibit A).  Paragraph 3 of the Pantalena Decl. does not allege that any of the "various trade shows" were before April 22, 2008, or before any other date. (Id.).  Paragraph 3 of the Pantalena Decl. does not allege any dates of "advertise[ment] of its S 210 device to the industry" and does not state that any such "advertise[ment]" was before April 22, 2008.   (Id.).   There are no copies attached or otherwise provided to corroborate any "advertise[ment] of its S 210 device to the industry" referenced in paragraph 3 of the Pantalena Decl.  (Id.).

102.    An April 22, 2008 email from Mr. Pantalena states, "we . . . wish to save a digital copy in our network for reference."  (Ex. 10, accompanying Exhibit A at GII0029355).

103.    The email chain provided as Exhibit A of the Pantalena Decl. (Ex. 10) included multiple confidentiality notices that stated: "The content of this e-mail and any files is CONFIDENTIAL and intended solely for the use of the individual or entity to whom it is

addressed."  (Ex. 10, accompanying Exhibit A at GII0029354-55; Ex. 15, pp. 39-48; Ex. F, at SII003720-22; Ex. I at SII007098-100).  Global obtained the email chain through its sister company, Framé (or Frame).  (*See* Ex. T, pp. 148-149).

104.   A different version of the email chain attached to the Declaration of Valerio Pantalena (Ex. 10, accompanying Exhibit A at GII0029354-55) exists that has a black bar at the top left.  (Ex. F, at SII003720; Ex. I at SII007098; *see also* Ex. T, pp. 154-155).

105.   Global has not alleged that Morillon (Ex. 10 at accompanying Exhibit A) was publicly accessible by virtue of being catalogued or indexed in a publicly accessible archive (e.g., a library, internet search engine) so as to be available to the extent that persons interested and ordinarily skilled in the subject matter or art can locate it by exercising reasonable diligence and using available research tools.  (Ex. E, pp. 2-3; *see also, generally,* ECF 119-0).

106.   Global has not alleged that Morillon (Ex. 10 at accompanying Exhibit A) was publicly accessible by virtue of being publicly displayed for a sufficient time and in a sufficiently broad manner as to be sufficiently accessible to persons interested and ordinarily skilled in the subject matter or art by exercising reasonable diligence.  (Ex. E, pp. 2-3; *see also, generally,* ECF 119).

107.   Morillon was not generally publicly accessible more than one year before the filing date of the '322 Provisional.   (Ex. 10 at GII0029305-06, GII0029315, GII0029328, GII0029335; Ex. 15, pp. 39-48; Ex. B at ¶¶ 21-24; Ex K at ¶ 15; *see also* SOF 82-87).

108.   Morillon fails to disclose each and every limitation of the asserted claims of the Patents-in-Suit in the level detail recited in those claims.   (Exs. 1-3 at claims; Ex. 10 at accompanying Exhibit A; Ex. 15, pp. 48-51; Ex. B at ¶¶ 25-33).

109.    Numerous photos and drawings in Morillon show a collector ring exposed to an interior of a bin (and to any grain or other materials in that bin) at least at the front and top, including the following photos and drawings (with annotations added):



(Ex. 10 at accompanying Exhibit A; Ex. B at ¶ 26; *see also* Ex. 15, pp. 48-51).

110.    Morillon does not show, teach, or disclose a "housing covering at least a top of the collector ring" as recited in claims 1, 15, and 19 of the '338 Patent, or in any asserted claims depending from those independent claims.  (Ex. 3 at pp. 1-2 and claims; Ex. 10 at accompanying Exhibit A; Ex. 15, pp. 48-51; Ex. B at ¶¶ 26 and 27; Ex. F at SII003697; SOF 86; *see also* Ex. H at SII008232 and SII008160; SOF 88).

111.    Morillon does not disclose that "the drive unit is encased by a cover located adjacent to the housing" where "the cover is sloped" as recited by claim 22 of the '338 Patent, which depends from claim 21 as well as claim 19.  (Ex. 3, at claims; Ex. 10 at accompanying Exhibit A; Ex. 15, p. 51; Ex. B at ¶ 30).

112.    Morillon does not show, teach, or disclose a "housing surrounding the collector ring" as recited in claim 1 of the '823 Patent or claim 1 of the '001 Patent, or in any asserted claims depending from those independent claims.  (Ex 1 at claims; Ex. 2 at claims; Ex. 10 at

accompanying Exhibit A; Ex. 15, pp. 48-51; Ex. B at ¶¶ 26 and 28; *see also* Ex. F at SII003697; Ex. H at SII008232 and SII008160; SOF 86 and 88).

113.    Morillon does not show, teach, or disclose that "the housing is attached to a drive unit on one side and to an auger section on another side" as recited by independent claim 1 of the '823 Patent, or in any asserted claims depending from that independent claim. (Ex. 1 at claims; Ex. 10 at accompanying Exhibit A; Ex. 15, pp. 48-49; Ex. B at ¶ 29; SOF 88).

114.    Lizambard (EP 1 516 836 A1) does not show, teach, or disclose a collector ring or slip ring.  (Ex. 13; Ex. B at ¶¶ 34 and 38; *see also* Ex. B at ¶¶ 50 and 51; Ex. J).  Lizambard discloses a "motorization member 30" or "drive member 30" or "motorization organ 30" or "motorization device 30" that is shown in FIG. 2A.  (Ex. 13 at ¶¶ 13 and 21 and FIG. 2B; Ex. B at ¶ 35; *see also* Ex. J at ¶¶ 13 and 21).  This "drive member" 30 is stated to function to "rotate the worm 32" through an angular gearbox, with the "worm 32" or "endless screw 32" illustrated as an auger in FIG. 2B and similarly described as an auger in ¶ 11 of the Lizambard translations.  (Ex. 13 at ¶¶ 11 and 13 and FIG. 2B; Ex. B at ¶ 35; *see also* Ex. B at ¶¶ 36 and 37; Ex. J at ¶¶ 11 and 13).

115.    The "covering" annotated in orange in the Loeffler Declaration (Ex. 24) and SOF 46 is identified and described by Lizambard as part of the "drive member 30".  (Ex. 13 at, e.g., ¶¶ 13 and 21 and FIG. 2B; Ex. B at ¶ 38; *see also* Ex. J; SOF 114).

116.    Because Lizambard does not disclose a collector ring (or slip ring) at all, Lizambard does not show, teach, or disclose a housing surrounding or covering at least a top of a collector ring (or slip ring).  (Ex. 13; Ex. B at ¶¶ 34 and 38; SOF 114-115; *see also* Ex. B at ¶ 50).

117.    Chief discloses a bin sweep device with a "protective hood" over a motor for a "gear drive arrangement" but shows an "electrical slip ring" (i.e., collector ring) laterally spaced

from that "protective hood", with the collector ring exposed to the interior of a bin and therefore

exposed to any solid materials stored in the bin (e.g., grain).  (Ex. 14; Ex. B at ¶ 41).  The "gear

drive arrangement" of Chief refers to the mechanical drivetrain between the motor and the auger

of the sweep arm shown in the "Type 'S'" photo, with the mechanical "gear drive" drivetrain

located directly below the motor.  (Ex. 14; Ex. B at ¶ 41).  These disclosures and teachings of

Chief are shown in the annotated "Type 'S'" photo from Chief reproduced below:



(Ex. 14; Ex. B at ¶ 41).

118.     Chief discloses that "the Type 'S' slip ring is [a] 'STEMMANN IP66' fitting in a

galvanized steel casing."  (Ex. 14; Ex. B at ¶ 42).  Stemmann is a well-known manufacturer of

collector rings, and "IP66" appears to refer to a particular Stemmann slip ring model or part

number.  (Ex. B at ¶ 42; *see also* Ex. 14).  The "galvanized steel case" disclosed by Chief is a

casing of the slip ring (or collector ring) itself and is not a separate "housing" as recited in the

asserted claims of the Patents-in-Suit.  (Ex. 14; Ex. B at ¶ 42; *see also* ECF 102, p. 16; Ex. B at ¶

47).

119.     Global has not alleged that Chief qualifies as prior art against the asserted claims

under any particular subsection (a)-(g) of pre-AIA 35 U.S.C. § 102.  (Ex. 15, pp. 36-37; Ex. 18;

SOF 42; ECF 119, pp. 26-27).

120.     Global has not alleged in its summary judgment motion filings that either Chief or Neuro[4] contains an enabling disclosure.  (*Contrast* SOF 32 and ECF 119, pp. 17 and <u>22</u> *with* SOF 42 and 52 and ECF 119, p. 26-27).

121.     Global has not alleged that Neuero qualifies as prior art against the asserted claims under any particular subsection (a)-(g) of pre-AIA 35 U.S.C. § 102.  (Ex 15, pp. 26, 37, and 82-83; Ex. 22; SOF 52; ECF 119, pp. 26-27).

122.     It was known in the relevant art that collector rings (or slip rings) for bin sweep applications, particularly for agricultural or grain bin applications, must be explosionproof.  (Ex. B at ¶ 47; Ex. V; *see also* Ex. B at ¶¶ 53 and 54).  The explosionproofing of a collector ring provides sealing against infiltration of grain and grain dust into the interior of the collector ring. (Ex. B at ¶ 47).  Indeed, preventing the infiltration of grain dust into the interior of a collector ring—where "live" electrical conductors are present and there is a risk of electrical sparks being generated, particularly where electricity is transmitted across a rotational interface—is an important part of what explosionproofing accomplishes.  (Id.).  Grain dust is a highly explosive material and must generally be kept separate from electrical components (like brushes or the like inside a collector ring that transmit electrical current or signals) that could ignite a grain dust explosion.  (Id.).  The explosionproofing of commercially available collector rings suitable for agricultural applications is provided in part by the casing that is part of the collector ring itself (but such a casing is separate from the housing recited in claims of the Patents-in-Suit).  (Id.; ECF 102, p. 16).

123.     Global's expert witness Frank Loeffler has said, "I noticed the '338 patent is centered around the collector ring.  Do they manufacture their own or do they purchase a

---

[4] "Neuro" should read "Neuero."

commercially available unit?  For grain handling this device would need to be explosion proof and I did not see any mention of that in the patent.  I [sic] simply says a housing."  (Ex. V).

124.    If the teachings of Lizambard were combined with the teachings of Chief, this would not have led a person of ordinary skill in the relevant art to provide a housing that covers at least a top of the collector ring or that surrounds the collector ring, but would instead result in a collector ring that is still exposed to the interior of a bin and any contents of that bin (e.g., grain). (Ex. B at ¶ 52).

125.    Global has conceded that the teachings of Neuero are at most merely cumulative with those of Chief.  (SOF 55; *see also* Exs. 14, 20, and 25).

126.    There would have been no motivation to combine the teachings of Chief or Neuero with those of Lizambard as suggested by Global or Global's expert Mr. Loeffler.  (Ex. 15, pp. 38, 39, 51-55; Ex. B at ¶¶ 52 and 53).

127.    The claimed inventions of the Patents-in-Suit, taken as a whole, addressed the grain pressure within a bin (beyond merely grain dust infiltration) that can still make an exposed and unhoused collector ring vulnerable to damage from crushing or the like despite the presence of an explosionproof casing of the collector ring itself.  (Ex. C, pp. 152-153; *see also* Exs. 1-3 and 8; Ex. B at ¶ 47; Ex. F at SII003597; Ex. G, pp. 1-2; Ex. H at SII008132, SII008160; Ex. Q at SII003549, SII003568, SII003570-72; Ex. R at, *e.g.*, FIG. 3; Ex. V).   The USPTO has acknowledged during examination of at least the '001 Patent and the '338 Patent that the "housing" recited in asserted claims is different from the prior art, such as Francis (U.S. Pat. No. 3,449,840), in which a collector ring is exposed and lacks a housing (that is separate from any casing or the like that is part of the collector ring itself).  (Ex. 2, p. 1; Ex. 3, pp. 1-2; Ex. B at ¶ 47; Ex. F at

SII003597; Ex. Q at SII003549, SII003568, SII003570-72; Ex. R at, e.g., FIG. 3; *see also* Ex. G , pp. 1-2; Ex. H at SII008132, SII008160).

128.   The '372 Publication (Sudenga II) does not show, teach, or disclose a collector ring or slip ring.  (Ex. 19; Ex. B at ¶ 48; *see also* Ex. B at ¶ 50).  The terms "collector ring", "slip ring" or the like do not appear in the '372 Publication.  (Ex. 19; Ex. B at ¶ 48).  Moreover, the figures of the '372 Publication do not disclose a collector ring or the like, as shown in the annotated comparison of figures from the '372 Publication and the asserted '338 Patent:



FIG. 2 of '372 Publication (left) and FIG. 2 of '338 Patent (right)

(Ex. 3, FIG. 2 Ex. 19, FIG. 2; Ex. B at ¶ 48).

129.   Morillon does not disclose a tractor with a motor for moving a sweep in an arc about a bin nor a sweep mechanism or linear conveyor that can move in an arc about a pivot axis independent of movement of grain engaging surfaces of the sweep mechanism or linear conveyor to move grain along its length toward the floor grate but instead discloses a reducer drive with a reducer wheel that moves the sweep in an arc using gearing connected to an auger, such that the reducer wheel turns at a speed dependent upon rotation of the auger.  (Ex. 10, accompanying Exhibit A at GII0029305, GII0029316, GII0029318-22, GII0029335, GII0029344; Ex. B at ¶¶ 31-

33).   This is apparent in Morillon from pages GII0029321, GII0029335, and GII0029344, especially, which illustrate the reducer drive transmission between the auger and the reducer wheel.  Portions of the relevant reducer drive (with reducer drive transmission) and reducer wheel drawings of Morillon are as follows:



(Ex. 10, accompanying Exhibit A; Ex. B at ¶ 32).

130.    Lizambard does not disclose a tractor with a motor for moving a sweep in an arc about a bin nor a sweep mechanism or linear conveyor that can move in an arc about a pivot axis independent of movement of grain engaging surfaces of the sweep mechanism or linear conveyor to move grain along its length toward the floor grate but rather discloses a reducer drive with a reducer wheel 33 that moves the sweep in a "circle of radius" (that is, in an arc) using gearing (namely, "coupling members 330" in the form of a "gear reduction box") connected to an auger 32, such that the reducer wheel 33 turns at a speed dependent upon rotation of the auger 32.  (Ex. 13, ¶ 14, FIGS. 2A and 2B; Ex. B at ¶¶ 39 and 40; *see also* Ex. 13, ¶ 48, FIG. 3B; Ex. J; SOF 63).



(Ex. 13, FIG. 2B).

131.    Chief does not disclose a tractor with a motor nor a sweep mechanism or linear conveyor that can move in an arc about a pivot axis independent of movement of grain engaging surfaces of the sweep mechanism or linear conveyor to move grain along its length toward the floor grate but instead discloses a "reducer drive wheel" that is available in two wheel widths.  The reducer drive wheel "advances" the sweep in an arc about a bin.  (Ex. 14; Ex. B at ¶¶ 43 and 44; *see also* SOF 63).  The two different width reducer drive wheels are shown in Chief as follows:



(Ex. 14; Ex. B at ¶ 43).

132.    Neuero does not disclose a tractor with a motor nor a sweep mechanism or linear conveyor that can move in an arc about a pivot axis independent of movement of grain engaging surfaces of the sweep mechanism or linear conveyor to move grain along its length toward the floor grate but instead discloses a reducer drive and reducer wheel to move a sweep arm in an arc within a bin, as shown by the following photo and drawing:




(Exs. 20 and 25; Ex. B at ¶¶ 45-46).

133.    Persons of ordinary skill in the art at the time of invention of the inventions recited in the asserted claims would have understood that a "tractor" as claimed was different from a reducer drive or reducer drive wheel assembly.  (Ex. B at ¶ 54).

134.    There was no motivation for a person of ordinary skill in the art to combine the teachings of the '372 Publication with those of Morillon, Chief, Neuero, and/or Lizambard as suggested by Global or Global's expert Mr. Loeffler.  (Ex. 15, pp. 38, 39, 48-55, and 87; Ex. B at ¶ 54).

135.    Sudenga has evidence of objective indicia of non-obviousness, and may obtain more such evidence pending resolution of a motion to compel.   (*See* ECF 123 at pp. 2-4 and ECF 125 at pp. 2-3).  For instance, the Patents-in-Suit were asserted in another patent infringement lawsuit under the '001 Patent and the defendant (NorStar Industries Ltd.) in that other lawsuit took a license, and another third party (Behlen Mfg. Co.) discontinued its infringing product rather than take a license to the Patents-in-Suit.  (Ex. O at ¶¶ 6, 8, and 9 and Attachment S1). Furthermore, there is evidence of copying, including by Global.  (Id. at ¶¶ 6-9; Ex. 5; Ex. K at Attachment H4; Ex. W; Ex. X; Ex. T at pp. 19-21 and 24-28).  Global's own engineering files included copies of Sudenga publications describing products that embodied inventions recited in the asserted claims,

including, for instance, a Sudenga publication from June 2012 that describes the "Patent Pending" Sudenga D150 bin sweep product "equipped with a Sudenga Above-Floor Slip Ring option" and a Global engineer identified as a "lead person" on the design of the accused NexGen 3000 product photographed the Sudenga D150 bin sweep product at a February 2013 trade show in Louisville. (Ex. 4, pp. 7-10; Ex. K at Attachment H4; Ex. W; Ex. X; Ex. T at pp. 19-21 and 24-28).  Global's business records from early 2014 subsequently show a "purpose" of the NexGen 3000 product development to be to "develop slip ring mounting to bring it out of the center well . . . ."  (Ex. W; *see also* Ex. L).  There is also evidence of commercial success in that Sudenga has continued to offer for sale a prior art bin sweep product (without an above-floor collector ring assembly) but sales of bin sweeps have overwhelmingly been for the newer product with an above-floor collector ring assembly covered by the Patents-in-Suit.  (Ex. O at ¶ 10).

136.    The accused product, Global's NexGen 3000 bin sweep, meets all limitations of at least claim 1 of the '823 Patent.  (Ex. 5, pp. 1-7; Ex. B at ¶¶ 55-61; *see also* Ex. 9; Ex. L; Ex. Y; ECF 102, pp. 12-16; SOF 68).

137.    The accused product, Global's NexGen 3000 bin sweep, meets all limitations of each of claims 1, 6, and 8 of the '823 Patent.  (Ex. 5, pp. 1-10; Ex. B at ¶¶ 55-61; *see also* Ex. 9; Ex. L; Ex. Y; ECF 102, pp. 12-16; SOF 68).

138.    A "pivot stand" as recited in at least claim 1 of the '823 Patent is not limited to a single-piece object and can be a multi-piece assembly.  (Ex. 1, claim 1; Ex. 9, pp. 17, P-3 and P-4; ECF 77 at p. 24; ECF 102 at p.13; SOF 26-27; ECF 119 at pp. 7-8; Ex. B at ¶¶ 57-61; *see also* Ex. 5, pp. 1-5).

139.    Global's reference to the "flange for the slip ring mount tube" is a reference to a "mount" that is a separate component from the cylindrical "slip ring mount tube".  (SOF ¶ 27; ECF 119 at p. 7; Ex. B at ¶ 58).

140.    It is possible for a "pivot stand" as recited in claim 1 of the '823 Patent to have an attachment "to a top surface of the floor grate" and to further have an additional attachment to another location, such as an additional attachment to a bottom surface of the same floor grate.  (Ex. B at ¶ 6; ECF 102, p.13 n.1; *see also* ECF. No. 77, pp. 28-29 and n.9).  The asserted claims of the '823 Patent do not preclude additional attachments beyond the requirement of "a pivot stand attached to a top surface of the floor grate".  (ECF 102, p.13 n.1; *see also* ECF. No. 77, pp. 28-29 and n.9).

141.    Global's accused product includes a "WLMT Top Bearing Retainer" (part no. 1039096) that is also called the "top plate", "bearing mount", or "retainer, top bearing" or the like that is attached to a top surface of the floor grate of the center well (also called a sump or hopper) with bolts, as is shown in the following excerpts from Global's NexGen 3000 product manuals and an additional photo:



(2014 manual p. P-4)

| Ref. No. | Part No. | Description |
|---|---|---|
| 1 | 1043345 | Shield, Entrance (all bin diameters) |
| 2 | 1043281 | Center Well Weldment |
| 3 | 1043308 | Block, UHMW Thrust |
| 4 | 1039096 | Retainer, Top Bearing |

(2014 manual p. P-4)



(2017 manual p. P-4)

| Ref. No. | Part No. | Description |
|---|---|---|
| 1 | 1043345 | Shield, Entrance (all bin diameters) |
| 2 | 1043281 | Center Well Weldment |
| 3 | 1043308 | Block, UHMW Thrust |
| 4 | 1039096 | Retainer, Top Bearing |

(2017 manual p. P-4)



**Bronze Bushing on Top Plate**

**Bottom Plate w/ Bronze Bushing**

**Fig. 7**

(2014 manual, p. 13)



(2017 manual, p. 13)



(GII0000023)

(Ex. 9, pp. 13 and P-4; Ex. B at ¶¶ 57 and 61; Ex. L, pp. 13 and P-4; Ex. T, pp. 81-83; Ex. Y).

142.    Global's Owner's & Operator's Manual for the accused NexGen 3000 product describes a bronze "bushing on the top plate" that "can eventually begin to wear and may become oval shaped . . . ."  (Ex. 9, p. 13 [GII0000212]; Ex. L, p. 13).  Wear on the top plate bushing (as described on p. 13 of the 2014 and 2017 manuals) is due to lateral contact between components in a direction generally perpendicular to the pivot axis of the sweep.  (Ex. B at ¶ 61).

xl

143.   The following annotated image from the 2017 manual for the accused NexGen 3000 product shows attachments of a multi-piece pivot stand to both a top surface and a bottom surface of a floor grate:



(Ex. 9, p. 17; Ex. B, ¶ 57).

144.   Sudenga's infringement contentions identified the "WLMT Top Bearing Retainer" (part no. 1039096), "top plate", "bearing mount", "retainer, top bearing", or the like together with the "mount tube" as part of the multi-piece structure that satisfied the "pivot stand attached to a top surface of the floor grate" limitation of asserted claims of the '823 Patent:



Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page 16.



Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page 17

(Ex. 5, pp. 1-5; Ex. D, pp. 1-5).

*Sudenga's Further (New) Statements of Material Fact:*

**Pleadings and Procedural Background**

145.    Sudenga has pled Counts I-III for infringement by Global of the '823 Patent, the '001 Patent, and the '338 Patent, respectively. (ECF 61). Sudenga has pled that Global's infringement is willful. (ECF 61 at ¶¶ 38, 51, 67).

146.    Global has denied liability under Counts I-III of Sudenga's pleadings and has made a first affirmative defense of alleged noninfringement and a second affirmative defense of alleged invalidity. (ECF 62).

147.    Global has plead Counterclaim Counts I-III for a declaratory judgment of noninfringement of each of the Patents-in-Suit. (ECF 62, pp. 35-36). Global has also plead

Counterclaim Counts IV-VI for declaratory judgment of invalidity of each of the Patents-in-Suit. (ECF 62, pp. 36-37).  Further, Global has plead Counterclaim Count VII for "Declaratory Judgment of Entitlement to Attorney's Fees", alleging entitlement to such attorney's fees under 35 U.S.C. § 285.  (ECF 62, pp. 36-37).

148.   The Court issued its claim construction order (signed Dec. 3, 2019) on December 4, 2019.  (ECF 102).  The Court construed three undisputed and two disputed terms as follows:

| Term | Court's Construction |
|---|---|
| Sweep mechanism | A mechanism for moving solid material, including an auger with flighting, a chain with paddles, a belt, a cleated belt, or the like. |
| Linear conveyor | A mechanism for moving solid material, including an auger with flighting, a chain with paddles, a belt, a cleated belt, or the like. |
| Extending above a top surface of the floor grate | The given element extends above the top surface of the floor grate, but is not necessarily attached to the top surface of the floor grate. |
| Collector Ring | An electromechanical device also called a 'slip ring' that allows the transmission of power and/or electrical signals from a stationary to a rotating structure. Further, a 'housing' recited in the claims of the asserted patents is separate from a casing, enclosure, or the like that, if present, is not part of the recited 'collector ring' itself. |
| A pivot stand attached to a top surface of the floor grate | Use plain and ordinary meaning. But, "attached" means "joined, fastened, or connected." |

(ECF 102, p. 16).

149.   The Court issued an Initial Patent Scheduling Order on October 30, 2018, (ECF No. 48), which was subsequently amended (ECF Nos. 57, 69 and 103). The Court's scheduling orders set deadlines for, *inter alia*, "Exchange of Proposed Terms for Construction" (pursuant to Patent Local Rule 4.1(a)) by February 22, 2019.  (Id.).

150.    Global did not dispute the scope or construction of the term "pivot stand" by the Court's scheduling order deadline for "Exchange of Proposed Terms for Construction". (ECF 77-12; *see also* ECF 77, p. 22). Global has not sought leave to amend the Court's scheduling order(s) in order to raise new or additional terms for claim construction, and did not make a request under Local Rule 7.3 for the Court to reconsider its December 4, 2019 claim construction order. (July 1, 2020 Declaration of Austen Zuege at ¶ 41)

151.    The Court's scheduling orders and D. Kan. Patent Local Rule 3.6 set a January 15, 2020 deadline for establishing reliance on advice of counsel for any claim or defense; Global did not invoke any reliance on advice of counsel provisions by that deadline or produce materials under Patent Local Rule 3.6(a) and (b) by that deadline, and Global is not relying on any advice of counsel defense nor is Global relying on advice of counsel in support of any of its counterclaims. (*See* ECF Nos. 57, 69, 102, and 103).

152.    On April 10, 2020, Global moved for partial summary judgment on Counts I-III of Sudenga's Third Amended Complaint for Patent Infringement. (ECF 118; *see also* ECF 61 and 119). More particularly, Global's motion for partial summary judgment was based on (a) alleged non-infringement of claims 1, 6, and 8 of the '823 Patent, (b) alleged invalidity of claims 1, 6-8, 10, and 11 of the '001 Patent and claims 1, 4-19, 21, and 22 of the '338 Patent based on alleged lack of priority to Sudenga's PPA that allegedly creates an on-sale bar from a September 2009 sale to Kaskie Bros., and (c) alleged invalidity of all Asserted Claims of each of the Patents-in-Suit based on alleged anticipation by Morillon (plus obviousness of dependent claims with so-called "tractor limitations" in view of Sudenga II) and/or alleged obviousness over the combination of Chief or Neuero in view of Lizambard (plus Sudenga II for dependent claims with so-called "tractor limitations"). (ECF 119, pp. i-ii and 1-30; Exs. 12, 18, and 22; *see also* Ex. AA).

153.    Global's April 10, 2020 motion for partial summary judgment did not argue noninfringement of the '001 Patent or the '338 Patent, and did not argue invalidity based on all of its Amended Invalidity Contentions as served January 29, 2020.  (ECF 119; Exs. AA-AF; *see also* SOF 152).

### Information About the Patents-in-Suit and the Parties

154.    Alan G. Hoogestraat is the sole inventor of U.S. Patent Nos. 8,616,823 ("the '823 Patent"), 9,206,001 ("the '001 Patent"), and 10,017,338 ("the '338 Patent") (collectively, the "Patents-in-Suit"), each entitled "Bin Sweep Collector Ring Assembly." (Exs. 1-3 at front pages; Ex. K at ¶ 4; ECF 62 at ¶ 7; *see also* SOF 71 and 87).

155.    The '823 Patent was issued by the United States Patent and Trademark Office ("USPTO") on December 31, 2013 from United States Patent Application Serial No. 13/030,836. (Ex. 1 at front page).  A Certificate of Correction for the '823 Patent was issued by the USPTO on July 29, 2014.  (Id. at Certificate of Correction).

156.    The '001 Patent was issued by the USPTO on December 8, 2015 from United States Patent Application Serial No. 14/600,186. (Ex. 2 at front page).  The '001 Patent is a continuation of the application that issued as U.S. Patent No. 9,206,000, which is a continuation of the application that issued as the '823 Patent.  (Id.).

157.    The '338 Patent was issued by the USPTO on July 10, 2018 from United States Patent Application Serial No. 14/961,468. (Ex. 3 at front page).  The '338 Patent is a continuation of the application that issued as the '001 Patent.  (Id at pp. 1-2).

158.    The provisions of 35 U.S.C. §§ 102, 103, and 112 in effect prior to the enactment of the American Invents Act ("pre-AIA") apply to the asserted claims of the Patents-in-Suit and to

all the claims, counterclaims, and defenses plead in the present action.  (Ex. AA, p. 34; Exs. 1-3 at front pages; Ex. 4, p. 11; SOF 1).

159.    Sudenga is the owner of each of the Patents-in-Suit by assignment, and assignment documents have been recorded with the USPTO for each of the Patents-in-Suit.  (Ex. AG; Exs. 1-3 at front pages).

160.    Sudenga sells bin sweep systems, including models D150 and D100, under the MAX™ D Series Commercial Grain Bin Sweep brand name that embody inventions claimed in the Patents-in-Suit.  (Ex. K at ¶ 14 and Attachment H4; Ex. M, pp. 8 and 10; Ex. 4, pp. 7-10; Exs. AH and AI).  Sudenga has also previously sold bin sweep systems under the Series II Sweep Auger and Series III Sweep Auger brands that embodied inventions claimed in the Patents-in-Suit.  (Ex. K at ¶¶ 7-9 and 13 and Attachments H1-H3; Ex. M, pp. 8 and 10; Ex. O at ¶¶ 5 and 10; Ex. 4, pp. 7-10).

161.    Sudenga first sold the MAX™ D Series Commercial Grain Bin Sweep Model D150 in February 2014 and first sold the MAX™ D Series Commercial Grain Bin Sweep Model D100 in November 2014.  (Ex. M, p. 9).

162.    Sudenga first sold the Series II Sweep Auger product that embodied inventions claimed in the Patents-in-Suit on September 11, 2009 and first sold the Series III Sweep auger that embodied inventions claimed in the Patents-in-Suit on September 14, 2009.  (Ex. M, p. 9; Ex. P; *see also* SOF 23).

163.    Following the grant of the '823 Patent at the end of 2013, Sudenga began marking bin sweep products with one or more of the patent numbers for the Patents-in-Suit beginning in March 2014, and has substantially continuously marked products covered by the Patents-in-Suit since that time.  (Ex. M, p. 10; Exs. AH and AI).

164.     Sudenga notified Global that the Accused Product infringed the '823 Patent and the '001 Patent by letter on January 28, 2016, and notified Global's counsel that the Accused Product infringed the '338 Patent (referred to as "a recently granted patent") by email no later than September 4, 2018 and by telephone no later than August 28, 2018.  (Exs. AJ and AK; *see also* ECF 1 and 37; Ex. AL).

165.     Sudenga notified Global, through Global's litigation counsel, of infringement of the '989 Patent by Global's NexGen 3000 bin sweep product (the Accused Product) in writing on January 27, 2020.  (Ex. AM).  By telephone, counsel for Sudenga had previously discussed with counsel for Global that Sudenga would not seek to add a count for infringement of the '989 Patent to the present suit due to timing concerns, because the '989 Patent had been granted after claim construction was already completed in the present action.  (July 1, 2020 Declaration of Austen Zuege at ¶ 42; *see also* SOF 87).

166.     Global is a Nebraska corporation and a wholly-owned subsidiary of Ag Growth International Inc. ("AGI").  (ECF 18; ECF 22-5 at ¶¶ 3 and 4; ECF 62 at ¶¶ 2 and 26).  More specifically, Westfield Distributing (North Dakota), Inc. is the sole shareholder of Global, Ag Growth Holdings Corp. is the sole shareholder of Westfield Distributing, and AGI is the sole shareholder of Ag Growth Holdings Corp. (ECF 18, p. 2).  Global has a place of business in Clay Center, Kansas.  (ECF 22-5 at ¶¶ 5 and 6; ECF 62 at ¶ 5).

167.     Global became an AGI subsidiary on April 4, 2017 upon a share purchase.  (Ex. AN at p. 4; Exs. AO and AP; ECF 22-5 at ¶ 3; ECF 61-4 and 134-3 at ¶ 8; *see also* SOF 166).  Since that acquisition, AGI has controlled Global's operations.  (Ex. AZ, p. 139; *see also, generally,* ECF 22-5 and 134-3).

168.    Global makes and sells bin sweep systems through its Hutchinson/Mayrath division and uses its "Hutchinson" brand on its bin sweep products.  (Ex. 9 at GII0000265; ECF 22-5 at ¶ 5).  Global is a direct competitor of Sudenga in the bin sweep market in this country.  (Id.; Exs. AQ and BC).

169.    Global makes, sells, and offers for sale in the United States the "Hutchinson NexGen 3000 Series Commercial Sweep" bin sweep system that is also referred to as the "NexGen 3000 Klean Sweep Auger" bin sweep system (referred to herein also as the "Accused Product"). (Ex. 5; Ex. AR; Ex. 9; Ex. L; *see also* Ex. BK; SOF 25; ECF 22-5 at ¶ 6).

170.    Global's Accused Product has an optional, add-on "Tru-Klean Chain & Paddle Sweep" accessory, which is also referred to as the "Tru-Klean Drag Conveyor" and "Drag Section Assembly," made, sold, and offered for sale in the United States by Global. (Ex. 5; Ex. 9 at GII0000198, GII0000222-GII00002229, and GII0000265; Ex. AR; *see also* Ex. L; Ex. BK).   The "Tru-Klean Chain & Paddle Sweep" accessory has a chain and paddle sweep mechanism that acts as a secondary sweep mechanism in addition to an auger with flighting that acts as the primary sweep mechanism.  (Id.; *see also* ECF 102, p. 16).

### Level of Skill in the Relevant Art

171.    Sudenga asserts that the prior art of record during examination of the Patents-in-Suit reflects the appropriate level of skill in the relevant art, but, to the extent that further explanation of the level of skill in the art is required, Sudenga believes that a person of ordinary skill in the art of the Patents-in-Suit would have at least an undergraduate degree in engineering, or industry experience comparable to such an educational background, plus at least one year of experience with agricultural or materials handling equipment design and/or agricultural bin or bin sweep safety.  (Ex. B at ¶ 9; ECF 77, pp. 11-12; SOF 30).  Sudenga's expert witness, Dr. Carol

Jones, has indicated that she believes Sudenga's position reflects the proper definition of a person of ordinary skill in the relevant art but also that her opinions and analysis would not change if Global's alternate definition of a person of ordinary skill in the relevant art were adopted.  (Ex. B at ¶ 9; SOF 69; *see also* SOF 30, 31).

172.    Sarcastically referring to "Engineering Geniuses," email correspondence between Global's engineering and sales personnel and a dealer-distributor about Global's NexGen bin sweep products and competitive Sudenga bin sweep products from March 2015 refers to technical difficulties associated with using tractors for bin sweeps, including difficulties associated with electric tractor motors and supplying power to such electric tractor motors.  (Ex. AQ).

**Sudenga's Infringement Contentions and Global's Noninfringement Contentions**

173.    Sudenga is currently asserting that Global is liable for infringement of claims 1, 6, and 8 of the '823 Patent, claims 1, 6-8, 10, and 11 of the '001 Patent, and claims 1, 4-19, 21, and 22 of the '338 Patent (collectively, the "Asserted Claims").  (Ex. 5; *see also* Ex. 4).

174.    Sudenga and Global entered into a Covenant not to Sue on January 24, 2019 in which Sudenga agreed to no longer assert certain claims of the Patents-in-Suit and to no longer assert U.S. Patent No. 9,206,000.  (Ex. AS; *see also* SOF 173).

175.    Sudenga contends that Global is liable for direct, literal infringement of the Asserted Claims based on Global's manufacture, use, sale, offering for sale, and/or importation of Global's NexGen 3000 Klean Sweep Auger product (the "Accused Product"), also known as the Hutchinson NexGen 3000 Series Commercial Sweep or the Model 3150 bin sweep product.  (Ex. 4, pp. 2-5; Ex. 5; *see also* Ex. 9 at GII0000198; Ex. BK; *see also, generally,* ECF 61).

176.    Global contends that none of the Asserted Claims are infringed by the Accused Product.  (Ex. AT; Ex. BJ, pp. 4-8; *see also* ECF 62, p. 32).

177.    Global's Accused Product meets all of the limitations of at least one claim of each of the Patents-in-Suit under the Court's December 2019 claim construction order.  (Ex. 5; Ex. B at ¶¶ 55-61; Ex. AU at ¶¶ 48-49; SOF 136, 137, 187; *see also* Exs. 1-4; Ex. BK; ECF 102; SOF 148).

178.    Global's Accused Product directly, literally infringes claims 1, 6, and 8 of the '823 Patent, claims 1, 6-8, 10, and 11 of the '001 Patent, and claims 1, 4-19, 21, and 22 of the '338 Patent.  (Ex. 5; Ex. B at ¶¶ 55-61; Ex. AU at ¶¶ 48-49; SOF 136, 137, 177; *see also* Exs. 1-4; Ex. BK; ECF 102; SOF 148).

179.    Global's Accused Product infringes at least one claim of the '823 Patent, as illustrated by the following table that compares the Accused product to independent claim 1 of the '823 Patent.



| Claim 1 Hoogestraat '823 Patent | Hutchinson NexGen 3000 Series Commercial Sweep |
|---|---|
| a pivot stand attached to a top surface of the floor grate, the pivot stand defining a vertical pivot axis; |  |

"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at *http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf*.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page 16.



Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page 17.

| a collector ring having a first stationary portion and a second rotatable portion, wherein the stationary portion is attached to the pivot stand above the floor grate; and | |

"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.

| a housing surrounding the collector ring, wherein the housing and second rotatable portion of the collector ring rotate together about the pivot axis, wherein the housing is attached to a drive unit on one side and to an auger section on another side, the drive unit containing a motor for driving an auger of the auger section. | |

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-2.



Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page 17.

(Ex. 5; Ex. B at ¶¶55-61; SOF 136, 137; *see also* Exs. 1, 4 and 9; Exs. L and Y; Ex. AR; ECF 102).

180.    In an email from Mr. Craig Minton included in a December 7, 2018 email chain related to Sudenga's allegation in the present action, Mr. Minton circled the "Retainer, Top Bearing" in a drawing of center well components and highlights the description of that part on page P-4 from the manual for the accused NexGen 3000 product.  (Ex. AV at GII0029400).

181.    Dependent claim 6 of the '823 Patent reads on the Accused Product, as illustrated in the following table.

| Claim 6 Hoogestraat '823 Patent | Hutchinson NexGen 3000 Series Commercial Sweep |
|---|---|
| 6. The apparatus of claim 1 wherein the housing comprises a peaked top cover. |  |

(Ex. 5; Ex. B at ¶¶55-61; SOF 136, 137; *see also* Exs. 1, 4, and 9; Ex. L; Ex. AR; ECF 102; SOF 180).

182.    In a December 7, 2018 email chain related to Sudenga's infringement allegations in the present action, Mr. Craig Minton of Global and Mr. Craig Nimgeers of AGI, Global's parent company, discussed "the peak of the cover" in the part of the accused NexGen 3000 product "where the slip ring would sit."  (Ex. AV at GII0029398).

183.    Global's accused product infringes at least one claim of the '001 Patent, as illustrated by the following table that compares the Accused product to independent claim 1 of the '001 Patent.

| Claim 1 Hoogestraat '001 Patent | Hutchinson NexGen 3000 Series Commercial Sweep |
|---|---|
| 1. An apparatus for use above a floor grate, the apparatus comprising: |  |

| a pivot pipe extending above a top surface of the floor grate, the pivot pipe defining a vertical pivot axis; |  |
|---|---|

"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.

| a collector ring having a first stationary portion and a second rotatable portion, wherein the stationary portion is attached to the pivot pipe above the floor grate; | |
|---|---|

"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.



| a sweep mechanism configured to move in an arc about the vertical pivot axis, the sweep mechanism having first and second ends, wherein the first end is positioned proximate the collector ring; | |

Sweep mechanism first end, proximate collector ring

Collector ring (inside housing)

Sweep mechanism second end (extendable)

Sweep mechanism

*Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-2; see also Hutchinson/Mayrath, "Hutchinson/Mayrath's NexGen 3150 Commercial Bin Sweep" (Nov. 26, 2014) at https://www.youtube.com/watch?v=Iw3xUtM3-JI.*

Vertical pivot axis

Sweep mechanism configured to move in arc about vertical pivot axis

*Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page 7.*

| a first drive unit positioned proximate the first end of the sweep mechanism, the first drive unit containing a first motor for driving the sweep mechanism, wherein the first drive unit and second rotatable portion of the collector ring rotate together about the pivot axis; and | |

First drive unit, containing first motor for driving sweep mechanism. The first drive unit and second rotatable portion of the collector ring rotate together about the pivot axis

*Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-2.*

Second rotatable portion of collector ring

Pivot axis

First drive unit

*Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.*



(Ex. 5; Ex. AU at ¶ 48; *see also* Exs. 2, 4, and 9; Ex. L; Ex. AR; ECF 102).

184.    Dependent claim 6 of the '001 Patent reads on the Accused Product, as illustrated in the following table.



(Ex. 5; Ex. AU at ¶ 48; *see also* Exs. 2, 4, and 9; Ex. L; Ex. AR; ECF 102; SOF 182, 183).

185.    Global's accused product infringes at least one claim of the '338 Patent, as illustrated by the following tables that compare the Accused product to independent claims 1, 15, and 19 of the '338 Patent.

| Claim 1 Hoogestraat '338 Patent | Hutchinson NexGen 3000 Series Commercial Sweep |
|---|---|
| 1. An apparatus for use above a floor grate, the apparatus comprising: | <br>"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf. |
| a pivot pipe extending above a top surface of the floor grate, the pivot pipe defining a vertical pivot axis; | <br>"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf.<br>Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3. |

a collector ring having a first stationary portion and a second rotatable portion, wherein the stationary portion is attached to the pivot pipe above the floor grate;



*"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf.*

Collector ring, with first stationary portion and second rotatable portion, and with stationary portion attached to pivot pipe above floor grate

Second rotatable portion

First stationary portion

*Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.*

a linear conveyor having a first end, a second end, and a length therebetween, wherein the first end is positioned proximate the collector ring and connected to the rotatable portion of the collector ring to rotate together with the rotatable portion about the pivot axis, and wherein the linear conveyor comprises a plurality of spaced apart grain engaging surfaces along the length between the first end and the second end;



Linear conveyor first end, proximate collector ring

Linear conveyor, connected to the rotatable portion of the collector ring to rotate together about the vertical pivot axis, and having a plurality of spaced apart grain engaging surfaces along the length between the first end and the second end

Length direction

Linear conveyor second end (extendable)

*Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-2; see also Hutchinson/Mayrath, "Hutchinson/Mayrath's NexGen 3150 Commercial Bin Sweep" (Nov. 26, 2014) at https://www.youtube.com/watch?v=Iw3xUtM3-JI.*

Plurality of spaced apart grain engaging surfaces along the length between the first end and the second end

Pivot axis

Rotation about pivot axis

*Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page 7 see also Hutchinson/Mayrath, "Hutchinson/Mayrath's NexGen 3150 Commercial Bin Sweep" (Nov. 26, 2014) at https://www.youtube.com/watch?v=Iw3xUtM3-JI.*

| | |
|---|---|
| a first drive unit positioned proximate the first end of the linear conveyor, the first drive unit containing a first motor for driving the linear conveyor, wherein the first drive unit and the second rotatable portion of the collector ring rotate together about the pivot axis; and |  |
| a housing covering at least a top of the collector ring, wherein the linear conveyor extends away from the housing, and wherein the first drive unit is positioned adjacent the housing. | |



Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-2.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-2.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.

| Claim 15 Hoogestraat '338 Patent | Hutchinson NexGen 3000 Series Commercial Sweep |
|---|---|
| 15. An apparatus for use above a floor grate, the apparatus comprising: |  |
| a pivot stand extending above a top surface of the floor grate, the pivot stand defining a vertical pivot axis; | |

| | |
|---|---|
| a collector ring having a stationary portion and a rotatable portion, wherein the stationary portion is attached to the pivot stand above the floor grate; and | 

"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf.

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3. |
| a housing covering at least a top of the collector ring, wherein the housing and rotatable portion of the collector ring rotate together about the pivot axis, wherein the housing is proximate a drive unit containing a motor for driving a linear conveyor, and wherein the linear conveyor is moveable in an arc about the vertical pivot axis and has a plurality of grain engaging portions that are spaced apart along a length of the linear conveyor from adjacent a first end thereof proximate the vertical pivot axis to a second end thereof. | 

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-2; see also Hutchinson/Mayrath, "Hutchinson/Mayrath's NexGen 3150 Commercial Bin Sweep" (Nov. 26, 2014) at https://www.youtube.com/watch?v=Iw3xUtM3-JI. |



First end of linear conveyor

Plurality of grain engaging portions that are spaced apart along a length of the linear conveyor from adjacent a first end thereof proximate the vertical pivot axis to a second end thereof

Shown for Reference Only

Vertical pivot axis, adjacent first end of linear conveyor

Intermediate Well

Linear conveyor movable in arc about pivot axis

Position Sweep Above Intermediate Wells Before Filling Bin

Second end of linear conveyor (extendable)

Direction of Travel

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page 7 see also Hutchinson/Mayrath, "Hutchinson/Mayrath's NexGen 3150 Commercial Bin Sweep" (Nov. 26, 2014) at https://www.youtube.com/watch?v=Iw3xUtM3-JI.

DRIVE ASSEMBLY COMPONENTS

Drive unit

Top of collector ring

Housing (shown exploded)

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.

| Claim 19 Hoogestraat '338 Patent | Hutchinson NexGen 3000 Series Commercial Sweep |
| --- | --- |
| 19. A material handling apparatus for use above a floor that includes a floor grate, the apparatus comprising: |  |

NEXGEN 3000 SERIES COMMERCIAL SWEEP

A Key Component to Zero Bin Entry Operation

Counterbalance Weights

Four Solid Drive Wheels on Sweep Tractor

Back Board

Pivoting Axle for Greater Traction

NexGen
COMMERCIAL SWEEP SYSTEM

48" x 48" x 18" Centerwell 50,000 BPH Free-flow capacity

"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf.



a pivot stand extending above a top surface of the floor grate, the pivot stand defining a vertical pivot axis;

**NEXGEN 3000 SERIES COMMERCIAL SWEEP**

*A Key Component to Zero Bin Entry Operation*

Floor grate with a top surface

48" x 48" x 18" Centerwell 50,000 BPH Free-flow capacity

*"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf.*

Pivot stand, extending above top surface of floor grate and defining vertical pivot axis

Vertical pivot axis

Floor grate

*Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.*

a collector ring having a stationary portion and a rotatable portion, wherein the stationary portion is attached to the pivot stand above the floor grate;

**NEXGEN COMMERCIAL SWEEP SPECIFICATIONS**

| NEXGEN Model | Capacities | Flighting | Drive | Tractor | Center Well Option | Control Box Option |
|---|---|---|---|---|---|---|
| 3000 | 7,800 – 18,000 BPH (200-406 TPH) | 18" (45.7cm) O.D. x 5/8" (10 mm) thick | 18:1 Gear Reducer drive up to 50 HP (40 kW) | Unique 4 wheel drive tractor design, one tractor on bin diameters up to 88' and two tractors in diameters 80' to 150' | 48" x 48" (122 cm x 122 cm) opening with above floor Electric Clip Ring | Control Box allows automatic control for starting and stopping the tractor determined by the amount of amps being drawn by the motor operating the sweep flight. Also features a tractor reverse option as well as a main "on-off" switch. Includes touch screen controls to allow flight speed control, will display current sweep position |

*"Hutchinson Bin Unloading Systems" Brochure (2016), page 10, available at http://www.hutchinson-mayrath.com/wp-content/uploads/2016/06/Bin-Unloading-Systems.pdf.*

Rotatable portion

Stationary portion

Collector ring, with stationary portion and rotatable portion, and with stationary portion attached to pivot stand above floor grate

*Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.*

| | |
|---|---|
| a linear conveyor moveable in an arc about the vertical pivot axis, wherein the linear conveyor has a plurality of discrete material engaging areas that are spaced apart along a radial length of the linear conveyor extending from a first end thereof that is proximate the vertical pivot axis; |  |



Vertical pivot axis, adjacent first end of linear conveyor

Motor is movable about the vertical pivot axis with the rotatable portion of the collector ring

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page 7 see also Hutchinson/Mayrath, "Hutchinson/Mayrath's NexGen 3150 Commercial Bin Sweep" (Nov. 26, 2014) at https://www.youtube.com/watch?v=Iw3xUtM3-JI.

Drive unit (shown exploded)

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.

---

a housing covering at least a top of the collector ring, wherein the housing and rotatable portion of the collector ring rotate together about the vertical pivot axis, wherein the housing is located proximate the motor,



Motor

Housing covering at least a top of the collector ring, wherein the housing and rotatable portion of the collector ring rotate together about the vertical pivot axis, wherein the housing is located proximate the motor

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-2; see also Hutchinson/Mayrath, "Hutchinson/Mayrath's NexGen 3150 Commercial Bin Sweep" (Nov. 26, 2014) at https://www.youtube.com/watch?v=Iw3xUtM3-JI.

Motor

Top of collector ring

Housing (shown exploded)

Hutchinson/Mayrath, "NexGen 3000 Klean Sweep Auger: Owner's & Operator's Manual" Publication No. 1044890 (effective August 15, 2014), page P-3.



| | |
|---|---|
| wherein the drive unit is at least partially encased relative to material flow from above. | Drive unit is at least partially encased relative to material flow from above |

(Ex. 5; Ex. AU at ¶ 49; *see also* Exs. 3 and 9; Ex. L; Ex. AR; ECF 102).

186. Dependent claims 21 and 22 of the '338 Patent read on the Accused Product, as shown in the following tables.



| Claim 21 Hoogestraat '338 Patent | Hutchinson NexGen 3000 Series Commercial Sweep |
|---|---|
| 21. The apparatus of claim 19 wherein the drive unit is encased by a cover located adjacent to the housing. | Drive unit encased by a cover located adjacent to the housing · Housing |



(Ex. 5; Ex. AU at ¶ 49; *see also* Exs. 3, 4, and 9; Ex. B at ¶ 30; Ex. L; Ex. AR; ECF 102; SOF 185).

187.     Sudenga's expert witness, Dr. Carol Jones, has opined that Global's Accused Product reads on at least one claim of each of the Patents-in-Suit, taking into account the Court's December 2019 claim construction order.  (Ex. AU at ¶¶ 8 and 48-49; Ex. B at ¶¶ 11 and 55-61; *see also* Exs. 4 and 5).

188.     Global's conduct involving the Accused Product establishes willful infringement during some or all of the period in which Global, made, used, offered for sale, sold, and/or imported the Accused Product.  (Ex. K at ¶ 14 and Attachment H4; Ex. T at pp. 19-21 and 24-28; Exs. W and X; Exs. AW to BD; SOF 89, 135, 151, 189, 191-196; *see also* ECF 61 at ¶¶ 38, 51, 67; SOF 163).

189.     Global received an advertisement for Sudenga's D150 Commercial Sweep product that stated, "Electricity is permanently installed in the sweep with patented above floor collector ring," at least as of May 1, 2014 when a dealer-customer asked about Global offering the features advertised by Sudenga on Global's own bin sweep products.  (Ex. AW; *see also* ECF 22-5 at ¶ 7). The Sudenga email advertisement forwarded by the dealer-customer to Global highlighted the "D150 Commercial Sweep" and stated, "Electricity is permanently installed in the sweep with patented above floor collector ring."  (Ex. AW at GII0014288).  In the received Sudenga email

advertisement, and in other Sudenga advertising materials in Global's records, "Zero-Entry" bin operation is emphasized.  (Id. at GII0014288; Ex. X at GII0001463-GII---1465).  The dealer-customer stated in a May 1, 2014 email, "there has [sic] been many questions when Hutch might offer this on any of the sweeps new or retro-fit to old ones?"  (Ex. AW at GII0014287).

190.    In product materials, Global's NexGen 3000 Klean Sweep product was identified as "Coming Spring 2014" with a "Slip ring above floor . . . ."  (Ex. AX).  Global released a product manual for the Accused Product in or around August 15, 2014.  (Ex. L at cover page).  Global first made, sold, offered for sale, and actually shipped one of the NexGen 3000 Accused Products in (or shipped from) this country no later than April 20, 2015.  (Ex. AY).

191.    Global did not perform any patent freedom-to-operate study when developing the Accused Product. (Ex. AN; Ex. AZ, p. 42; *see also, generally,* Ex. T).



192.    ██████████████████████████████████████████
████████████████████████████████████████████████████
████████  (*See* Ex. BA at GII0030625).  ███████████████████████
██████████████████████  (Id. at GII0030624-GII0030625).  █████████
████████████████████████████████████████████  (Ex. BL at GII0029722).

193.    ██████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████  (Ex. BA; Ex. AO at GII0030750-GII0030751; *see also* SOF 167, 192).

194.    Global, and/or its agents, first performed a prior art search against any of the Patents-in-Suit in April 2017. (Ex. AN at pp. 4-5).

195.    In a June 20, 2017 email, in responses inserted after questions posed by Mr. Craig Nimegeers, Mr. Ryan Kipp stated that AGI/Global personnel involved with the accused NexGen 3000 product "are looking for a bit of information on whether we can re-design to get around the alleged infringement."  (Ex. BB at GII0029741).

196.    In a January 30, 2018 email, Mr. Ryan Kipp of AGI, Global's parent company wrote, ████████████████████████████████████████████████████████████ ████████████████████████████████  (Ex. BC at GII0030717; *see also* SOF 192).

### Global's Invalidity Contentions

197.     Global contends that the Asserted Claims are all invalid.  (Exs. AA-AF; Exs. 12, 18, 22; *see also* ECF 62, p. 32).

198.    Global served its Amended Invalidity Contentions on January 29, 2020.  (Ex. AA; *see also* Exs. AB-AF; Exs. 12, 18, 22; SOF 197, 199).

199.    Global's Amended Invalidity Contentions set forth the following grounds for alleged invalidity of some or all of the Asserted Claims:[5]

| Alleged Prior Art or Reference | Claim Chart Appendix | Invalidity Contention(s) | Asserted Claims |
|---|---|---|---|
| September 2009 Kaskie Bros. Sale | none | On-sale bar under 35 U.S.C. § 102(b), premised upon lack of priority to Sudenga's PPA due to insufficient written description support under 35 U.S.C. § 112, ¶ 1 | all Asserted Claims |
| '338 Patent claim 4 | none | Statutory double patenting under 35 U.S.C. § 101 | claims 8, 9, and 14 of the '338 patent |

---

[5] Sudenga's pending Motion to Strike (ECF 133) addresses a dispute over the scope of Global's Amended Invalidity Contentions.

| Alleged Prior Art or Reference | Claim Chart Appendix | Invalidity Contention(s) | Asserted Claims |
|---|---|---|---|
| Bin Sweep Spirogyre S 210 Assembling & Maintenance Instructions ("Morillon") | Amended Appendix A | Printed Publication anticipation under unspecified subsection of 35 U.S.C. § 102 (pre-AIA) | claims 1 and 6 of the '823 patent,<br><br>claims 1, 6–8, and 11 of the '001 patent, and<br><br>claims 1, 4–9, 11–19, 21, and 22 of the '338 patent |
| Morillon in view of either U.S. Patent App. Pub. No. 2005/0254922 ("Sudenga I") or U.S. Patent Appn. Pub. No. 2005/0263372 ("Sudenga II") | Amended Appendix A | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claim 8 of the '823 patent,<br><br>claim 10 of the '001 patent, and<br><br>claim 10 of the '338 patent<br><br>(i.e., the so-called "tractor" claims) |
| Permanent Silo Sweep Augers, Technical Data Sheet TDS-460 ("Chief") and EP 1 516 836 A1 ("Lizambard") | Amended Appendix B1[6] | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claims 1 and 6 of the '823 patent,<br><br>claims 1, 6–8, and 11 of the '001 patent, and<br><br>claims 1, 4–9, 11–19, 21, and 22 of the '338 patent |
| Chief and Lizambard in view of Sudenga I or II | Amended Appendix B1 | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claim 8 of the '823 patent,<br><br>claim 10 of the '001 patent, and<br><br>claim 10 of the '338 patent<br><br>(i.e., the tractor claims) |
| Chief in view of U.S. Published Patent Application No. 2008/0131242 ("Duffy"), U.S. | (New) Appendix B2 | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claims 1 and 6 of the '823 patent,<br><br>claims 1, 6–8, and 11 of the '001 patent, and |

[6] Global's Amended Appendix B1 was labeled as "Amended" in its file name but, unlike other amended invalidity contention claim charts, Amended Appendix B1 did not explicitly use the word "Amended" in the title that appears at the top of the Amended Appendix B1 chart itself.

| Alleged Prior Art or Reference | Claim Chart Appendix | Invalidity Contention(s) | Asserted Claims |
|---|---|---|---|
| Patent No. 4,063,654 ("Shivvers"), U.S. Patent No. 3,233,755 ("Glenn"), or U.S. Patent No. 3,064,831 ("Cook") | | | claims 1, 4–9, 11–19, 21, and 22 of the '338 patent |
| Chief and Duffy, Shivvers, Glenn, or Cook in view of Sudenga I or II | (New) Appendix B2 | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claim 8 of the '823 patent, claim 10 of the '001 patent, and claim 10 of the '338 patent (i.e., the tractor claims) |
| Sweep Augers DNS & BM Sweeping Brush ("Denis I") | Amended Appendix C | Printed Publication anticipation under unspecified subsection of 35 U.S.C. § 102 (pre-AIA) | all Asserted Claims |
| Denis I in view of Sudenga I or II | Amended Appendix C | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claim 8 of the '823 patent, claim 10 of the '001 patent, and claim 10 of the '338 patent (i.e., the tractor claims) |
| Vis de Vidange integrale Integral Sweep Augers ("Denis II") | Amended Appendix D | Printed Publication anticipation under unspecified subsection of 35 U.S.C. § 102 (pre-AIA) | all Asserted Claims |
| Denis II in view of Sudenga I or II | Amended Appendix D | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claim 8 of the '823 patent, claim 10 of the '001 patent, and claim 10 of the '338 patent |

| Alleged Prior Art or Reference | Claim Chart Appendix | Invalidity Contention(s) | Asserted Claims |
|---|---|---|---|
| | | | (i.e., the tractor claims) |
| U.S. Patent No. 4,655,666 ("Cantenot") | Amended Appendix E | Anticipation under unspecified subsection of 35 U.S.C. § 102 (pre-AIA) | claims 1 and 6 of the '823 patent, claims 1, 6, 7, 8, and 11 of the '001 patent, and claims 1, 4–19, 21, and 22 of the '338 patent |
| Cantenot in view of Sudenga I or II | Amended Appendix E | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claim 8 of the '823 patent and claim 10 of the '001 patent (i.e., the tractor claims) |
| U.S. Patent No. 3,449,840 ("Francis") | Amended Appendix F | Anticipation under unspecified subsection of 35 U.S.C. § 102 (pre-AIA) | claim 1 of the '823 patent, claims 1, 6–8, and 11 of the '001 patent, and claims 1, 4–9, 11–19, 21, and 22 of the '338 patent |
| Francis in view of Lizambard | Unspecified hybrid of Amended Appendix F and Amended Appendix B1 | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claims 1 and 6 of the '823 patent, claims 1, 6–8, and 11 of the '001 patent, and claims 1, 4–9, 11–19, 21, and 22 of the '338 patent |
| Francis in view of Duffy, Shivvers, Glenn, or Cook | Amended Appendix F | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claim 1 of the '823 patent, claims 1, 6–8, and 11 of the '001 patent, and claims 1, 4–9, 11–19, 21, and 22 of the '338 patent |
| Francis and Duffy, Shivvers, Glenn, or Cook in view of Sudenga I or II | Amended Appendix F | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claim 8 of the '823 patent, claim 10 of the '001 patent, and |

| Alleged Prior Art or Reference | Claim Chart Appendix | Invalidity Contention(s) | Asserted Claims |
|---|---|---|---|
| | | | claim 10 of the '338 patent |
| Lizambard in view of Duffy, Shivvers, Glenn, or Cook | Amended Appendix G | Obviousness under 35 U.S.C. § 103 (pre-AIA) | Unspecified, but presumably<br><br>claims 1 and 6 of the '823 patent,<br><br>claims 1, 6, 7, 8, and 11 of the '001 patent, and<br><br>claims 1, 4–19, 21, and 22 of the '338 patent |
| Lizambard and Duffy, Shivvers, Glenn, or Cook in view of Sudenga I or II | Amended Appendix G | Obviousness under 35 U.S.C. § 103 (pre-AIA) | Unspecified, but presumably<br><br>claim 8 of the '823 patent,<br><br>claim 10 of the '001 patent, and<br><br>claim 10 of the '338 patent |
| Neuero stationäre Fegeschnecke für NL Silo Typ NFS ("Neuero") | (New) Appendix H | Printed Publication anticipation under unspecified subsection of 35 U.S.C. § 102 (pre-AIA) | all Asserted Claims |
| Neuero in view of Lizambard, Duffy, Shivvers, Glenn, and/or Cook | Unspecified hybrid of (new) Appendix H and Amended Appendix B1 or (new) Appendix B2 | Obviousness under 35 U.S.C. § 103 (pre-AIA) | all Asserted Claims |
| Neuero or Denis II in view of Sudenga I or II | (New) Appendix H | Obviousness under 35 U.S.C. § 103 (pre-AIA) | claim 8 of the '823 patent,<br><br>claim 10 of the '001 patent, and<br><br>claim 10 of the '338 patent |

| Alleged Prior Art or Reference | Claim Chart Appendix | Invalidity Contention(s) | Asserted Claims |
|---|---|---|---|
| | | | (i.e., the tractor claims) |

(Ex. AA; *see also* Exs. 12, 18, and 22; Exs. AB-AF and BE).

200.   Global's Amended Invalidity Contentions differed from its original Invalidity Contentions served on February 8, 2019, including new reliance on a Neuero reference that was not previously produced by Global or relied upon by Global in its original invalidity contentions. (*Contrast* Ex. AA *with* Ex. BF; *see also* Ex. BG).  Global amended its invalidity contentions, such as those based on Chief, in view of the Court's December 2019 claim construction ruling that rejected all of the Global's proposed constructions for the two disputed claim terms.  (Id.; *see also* ECF 102).

201.   In its original Invalidity Contentions Global listed the publication date of Denis I ("Sweep Augers DNS & BM Sweeping Brush") as "Currently unknown" but then in its Amended Invalidity Contentions made a new contention that Denis I was allegedly published "Prior to 2010."  (Ex. AA, p. 3; Ex. BF, p. 3).  In an April 9, 2019 interrogatory answer that was never supplemented, Global stated, "Global is presently unaware of the publication date of the Denis I document . . . ."  (Ex. E, p. 3).  When asked for evidence supporting its new contention that Denis I was allegedly published "Prior to 2010" Global's counsel did not produce or identify any evidence.  (Exs. BE and BG). Thus, Denis I is not prior art against any Asserted Claims.  (Id.; Ex. E, p. 3).

202.   Invalidity arguments in Global's briefing on its motion for partial summary judgment differed from invalidity contentions made in Global's Amended Invalidity Contentions. (ECF 119, 132; Ex. AA; Ex. AU at ¶ 36; *see also* ECF 133, 135, 136).

203.    Sudenga has previously provided rebuttals to Global's Amended Invalidity Contentions in its answer (including supplements) to Global's Interrogatory No. 18, (Ex. 15), and Sudenga has also filed a response brief (ECF 126) with its responses to invalidity arguments made in Global's opening brief on Global's motion for partial summary judgment (ECF 119, 132).

204.    During examination of the application for '823 Patent, the USPTO considered Shivvers and Sudenga I and II, and granted the '823 Patent over those and other references.  (Ex. 1, p. 1).  During examination of the application for the '001 Patent, the USPTO considered Francis, Glenn, Shivvers, and Sudenga I and II, and granted the '001 Patent over those and other references. (Ex. 2, pp. 1-2; Ex. Q; *see also* Ex. 1, p. 1; MPEP § 609.02 (I) and (II)(A)(2)).  During examination of the application for the '338 Patent, the USPTO considered Francis, Glenn, Shivvers, Sudenga I and II, Chief, Lizambard, Cantenot, Morillon, Denis II, Denis I, as well as a Non-infringement and Invalidity Claim Chart prepared by Global, and granted the '338 Patent over those references and materials as well as over other references and materials of record.  (Ex. 3, pp. 1-2; Ex. F; *see also* Ex. 1, p. 1; Ex. 2, pp. 1-2; MPEP § 609.02 (I) and (II)(A)(2); SOF 86).

205.    During examination of the application for the '989 Patent, the USPTO considered Francis, Glenn, Shivvers, Duffy, Cook, Meyer, Sudenga I and II, Chief, Lizambard, Cantenot, Morillon, Denis II, Denis I and Global's original Invalidity Contentions dated February 8, 2019, which included explanations of Global's arguments regarding alleged lack of written description support in Sudenga's PPA and the Kaskie Bros. sale from September 2009.  (Ex. G, pp. 1-2; *see also* Ex. 1, p. 1; Ex. 2, pp. 1-2; Ex. 3, pp. 1-2; MPEP § 609.02 (I) and (II)(A)(2); SOF 88).

206.    Francis was cited by Examiner Glenn Myers at the USPTO, (Ex. 2, pp. 1-2), who concluded when examining the application for the '001 Patent that "the prior art does not include a collector ring in combination with a housing surrounding the collector ring where the housing is

adjacent a sweep apparatus on one side of a pivot pipe and adjacent a drive unit for the sweep on the other side of the pivot pipe as recited in the claims."  (Ex. R; Ex. Q at SII003549; Ex. 2, pp. 1-2; *see also* Ex. AU at ¶ 12).

207.   Francis in view of Cook, Glenn, Shivvers, Duffy, Meyer, or Lizambard, and further in view of Sudenga I or II for certain dependent claims (the so-called "tractor claims"), do not render obvious any of the Asserted Claims of the Patents-in-Suit.  (Ex. AU at ¶¶ 10-16 and 46-47; *see also* Exs. AA and AE).  For instance, Francis does not disclose, teach or suggest "a housing surrounding the collector ring" as recited by the Asserted Claims of the '823 Patent and the '001 Patent or "a housing covering at least a top of the collector ring" as recited by the Asserted Claims of the '338 Patent, and such a teaching missing from Francis is not supplied by any of the other cited art.  (Ex. AU at ¶¶ 13, 14; *see also* Ex. R; SOF 122, 123, 202-204).  And there would not have been any motivation for a person of ordinary skill in the art to modify the teachings of Francis based on the teachings of any of the other art cited by Global to arrive at the subject matter recited in the Asserted Claims or as suggested in Global's Amended Invalidity Contentions.  (Ex. AU at ¶¶ 10, 14, 46, 47).

208.   Chief in view of Cook, Glenn, Shivvers, or Duffy, and further in view of Sudenga I or II for certain dependent claims (the so-called "tractor claims"), do not render obvious any of the Asserted Claims of the Patents-in-Suit.  (Ex. AU at ¶¶ 17-21; *see also* Exs. AA and AB).  For instance, Chief does not show, teach, or disclose "a housing surrounding the collector ring" or "a housing covering at least a top of the collector ring" as recited by the Asserted Claims.  (Ex. AU at ¶ 19; *see also* Ex. 14; SOF 117, 118, 122-124).  And there would not have been any motivation for a person of ordinary skill in the art to modify the teachings of Chief based on the teachings of any of the other art cited by Global to arrive at the subject matter recited in the Asserted Claims or

as suggested in Global's Amended Invalidity Contentions.  (Ex. AU at ¶¶ 17, 20, 21, 46, 47; *see also* SOF 124).

209.    Lizambard in view of Cook, Glenn, Shivvers, Duffy, or Meyer, and further in view of Sudenga I or II for certain dependent claims (the so-called "tractor claims"), do not render obvious any of the Asserted Claims of the Patents-in-Suit.  (Ex. AU at ¶¶ 22-25 and 46-47; *see also* Exs. AA and AF).  For instance, Lizambard does not show, teach, or disclose a collector ring or slip ring at all, and therefore does not show, teach, or disclose "a housing surrounding the collector ring" or "a housing covering at least a top of the collector ring" as recited by the Asserted Claims.  (Ex. AU at ¶ 24; *see also* Ex. 13; SOF 114-116, 122-124).  And there would not have been any motivation for a person of ordinary skill in the art to modify the teachings of Lizambard based on the teachings of any of the other art cited by Global to arrive at the subject matter recited in the Asserted Claims or as suggested in Global's Amended Invalidity Contentions.  (Ex. AU at ¶¶ 22, 24, 25, 46, 47; *see also* SOF 124).

210.    Cantenot does not disclose each and every limitation of the Asserted Claims arranged as recited in those Asserted Claims and therefore does not anticipate any of the Asserted Claims of the Patents-in-Suit, and Cantenot in view of Sudenga I or II does not render obvious any dependent claims of the Asserted Claims of the Patents-in-Suit that Global refers to as tractor claims.  (Ex. AU at ¶¶ 26-33 and 46; *see also* Exs. AA and AD).  For instance, Global's Amended Invalidity Contentions cite to embodiments in Cantenot that are hydraulically-powered and therefore does not show, teach, or disclose "a collector ring" as claimed or "a housing surrounding the collector ring" or "a housing covering at least a top of the collector ring" as recited by the Asserted Claims.  (Ex. AU at ¶¶ 28, 29).  Global's Amended Invalidity Contentions rely on anticipation rather than obviousness arguments regarding the independent Asserted Claims, and

do not allege any reasons or motivations to pick and choose elements from multiple, distinct embodiments and combine them in particular ways.  (Ex. AU at ¶¶ 28, 30-32; *see also* Exs. AA and AD).  And there would not have been any motivation for a person of ordinary skill in the art to modify the teachings of Cantenot based on the teachings of Sudenga I or II to arrive at the subject matter recited in the Asserted Claims that Global refers to as the "tractor claims".  (Ex. AU at ¶¶ 33 and 46).

211.   Denis II does not disclose each and every limitation of the Asserted Claims arranged as recited in those Asserted Claims and therefore does not anticipate any of the Asserted Claims of the Patents-in-Suit, and Denis II in view of Sudenga I or II does not render obvious any dependent claims of the Asserted Claims of the Patents-in-Suit that Global refers to as tractor claims. (Ex. AU at ¶¶ 41-46; *see also* Exs. AA and AC).  For instance, Denis II does not show, teach, or disclose a collector ring or slip ring at all, and therefore does not show, teach, or disclose "a housing surrounding the collector ring" or "a housing covering at least a top of the collector ring" as recited by the Asserted Claims.  (Ex. AU at ¶¶ 43, 44; *see also* SOF 114-116).   And there would not have been any motivation for a person of ordinary skill in the art to modify the teachings of Denis II based on the teachings of Sudenga I or II to arrive at the subject matter recited in the Asserted Claims that Global refers to as the "tractor claims".  (Ex. AU at ¶¶ 45, 46).

212.   The Asserted Claims of the Patents-in-suit are each valid over all of the references cited by Global.  (SOF 85-134, 203-211; Ex. 15, pp. 36-87; *see also, generally,* Exs. B and AU).

213.   Claims 8, 9, and 14 of the '338 appear in the same patent as claim 4 of the '338 Patent.  (Ex. 3).  Claims 8, 9, and 14 of the '338 are therefore valid under the double patenting provisions of 35 U.S.C. § 101.  (Id.).

## <u>ARGUMENT AND AUTHORITIES</u>

**III.    <u>INTRODUCTION</u>**

Global should be found liable for infringement of the Patents-in-Suit[7] and all of its defenses and counterclaims should be denied.  A preponderance of undisputable evidence establishes that Global's NexGen 3000 bin sweep product (the "Accused Product") falls within the literal scope of the Asserted Claims, as construed by the Court.  (SOF 178).  Importantly, Global's NexGen 3000 bin sweep product has a "collector ring" (or slip ring) and a "housing" as recited by the Asserted Claims, with the "collector ring" located above the floor for "zero bin entry" operation.



(Ex. AR; Ex 9)

Notably, in its own prior motion for partial summary judgment, Global did not make *any* non-infringement arguments with regard to the '001 Patent or the '338 Patent. (SOF 153).  And for the '823 Patent, Global's position was both contrary to the claim construction order in this case and an unconvincing exercise in skirting or distorting Sudenga's actual Infringement Contentions.

Undisputable evidence also indicates Global's infringement was willful.  For instance, while developing Global's Accused Product one of Global's engineers photographed Sudenga's D150 product covered by the Patents-in-Suit at a trade show, and despite arguing to Sudenga that there was no infringement Global's agents privately looked for possible product re-designs of the Accused Product and privately acknowledged that "it is possible that it does indeed infringe."

---

[7] For summary judgment purposes, Sudenga once again treats the '338 Patent as representative of all the Patents-in-Suit, as it previously did during claim construction.

(SOF 135, 188-196). ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████ (SOF 193). ████████████████████████████████

Lastly, Global will not be able to establish any of its Amended Invalidity Contentions by clear and convincing evidence. The U.S. Patent & Trademark Office ("USPTO") previously considered all but one of the references Global cites and the sole "new" reference (Neuero) is not old enough to qualify as prior art and therefore has no impact on validity.[8] (SOF 86; Ex. 15). The contents of the other cited references are substantively insufficient to establish invalidity, as the USPTO already concluded, but some of the other art identified in Global's Amended Invalidity Contentions also does not even qualify as a prior art "printed publication". Global's invalidity arguments also fail when they impugn the disclosure of Sudenga's provisional patent application ("PPA") in a self-serving manner that fails to take into account the level of ordinary skill in the art for subject matter in the so-called "predictable arts". In sum, Global puts forward no indication of any error in the USPTO's previous consideration of the most relevant art and instead puts forward an objectively weak set of arguments that merely ask this Court to second-guess the USPTO and its technical expertise. Such defenses fall short and should be disposed of on summary judgment.

## IV.   **APPLICABLE LAW**

### A.   **Summary Judgment**

---

[8] Sudenga recently was granted the '989 Patent, which is family related to the Patents-in-Suit and shares a priority claim to Sudenga's PPA. The USPTO considered Global's original Invalidity Contentions (and all art cited therein, including the 2009 Kaskie Bros. sale) and *granted the '989 Patent over those materials*. (SOF 87, 88, 165, 205; Exs. G and H; Ex. AU at ¶ 46).

2

"Summary judgment is appropriate if the moving party demonstrates that 'no genuine dispute' exists about 'any material fact' and that it is 'entitled to a judgment as a matter of law.'" *Neonatal Prod. Group, Inc. v. Shields*, 312 F. Supp. 3d 1010, 1012 (D.Kan. 2018) (quoting FED. R. CIV. P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-52 (1986). The moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010) (citation omitted).

### B.    Infringement

The unauthorized making, using, offering to sell, selling, or importing of a patented invention constitutes infringement.  35 U.S.C. § 271(a).  Infringement analysis is a two-step process that begins with claim construction followed by comparison of the accused product to the construed claims.  *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citations omitted). The comparison step is a question of fact.  *Id.*

### C.    Validity

#### 1.   Burden and Standard of Proof for Validity Challenges

Granted patents are presumed valid and a party challenging validity carries the burden of proof to try to establish invalidity by clear and convincing evidence.  35 U.S.C. § 282(a) ("Each claim of a patent . . . shall be presumed valid"); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).  The core of this long-standing principle is "that one otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance." *Radio Corp. of Am., Inc. v. Radio Eng'g Labs., Inc.*, 293 U.S. 1, 8 (1934) (citation omitted).  Under pre-America Invents Act (pre-AIA) law, patentability is generally assessed based on who was first to *invent* (as opposed to the first to file). 35 U.S.C. § 102 (pre-AIA); *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1380

(Fed. Cir. 1986) (articles dated well after the date of conception and within one year of the patent's filing date were neither § 102(a)/103 nor § 102(b)/103 prior art).

The Supreme Court has emphasized the USPTO's "considered judgment" on evidence that its examiners with technological subject matter expertise had available when originally granting the challenged patent(s). *Microsoft*, 564 U.S. at 97,109-12; *RCA*, 293 U.S. at 7. "When an attacker simply goes over the same ground travelled by the [US]PTO, part of the *burden* is to show that the [US]PTO was wrong in its decision to grant the patent." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) (emphasis in original). A defendant has "the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Id.* at 1359; *accord Cadence Pharms. Inc. v. Excela PharmSci Inc.,* 780 F.3d 1364, 1375 (Fed. Cir. 2015); *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260-61 (Fed. Cir. 2012). "Where . . . the patent office considered prior art as close to the patented invention as any suggested to the court, the court should be extremely reluctant to substitute its opinion for the expertise of the patent office." *Ingersoll-Rand Co. v. Brunner & Lay, Inc.*, 474 F.2d 491, 496 (5th Cir. 1973) (emphasis added).

### 2.   Anticipation and the Requirements to Qualify a Reference as "Prior Art"

35 U.S.C. § 102 (pre-AIA) set forth novelty requirements for patentability. "Invalidity on the ground of 'anticipation' requires lack of novelty of the invention as claimed. The invention must have been known to the art in the detail of the claim; that is, all of the elements and limitations of the claim must be shown in a single prior reference, arranged as in the claim." *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1383 (Fed. Cir. 2001) (emphasis added) (citations

omitted); *see also Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008) (anticipation not proven by multiple, distinct teachings an artisan might somehow combine).

But in order to qualify as "prior art" against a patent, a given reference must satisfy the requirements of at least one subsection of 35 U.S.C. § 102 (pre-AIA).  First, a given reference must be old enough to qualify as prior art.  A "critical date" under pre-AIA law refers to either the date of invention—for § 102(a), (e), and (g)—or one year before the priority date—for § 102(b).  Anything that falls *after* the "critical date" is *not prior art* under pre-AIA § 102.  Second, certain knowledge, use, sales, or the like outside the United States (i.e., not "in this country") did *not* qualify as prior art *regardless of the date*.  35 U.S.C. § 102(a), (b), (e), and (g) (pre-AIA).

Prior art under § 102(a), (b) and (g) must also generally be public. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402 (Fed. Cir. 1997).  This "involves some type of public disclosure and is not satisfied by knowledge of a single person, or a few persons working together." *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 586 F.Supp. 1176, 1216 (D. Kan. 1984), *aff'd in part and rev'd in part on other grounds*, 772 F.2d 1570 (Fed. Cir. 1985); *see also Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002).  The "public" requirement of pre-AIA § 102(a) means "one who invents something previously known or used in a literal sense, but which has been forgotten, abandoned, concealed, or otherwise 'lost,' is the first to 'enrich[] the art' by his disclosure and is therefore the original inventor."  *BASF Corp. v. SNF Holding Co.,* 955 F.3d 958, 965 (Fed. Cir. 2020) (citation omitted; alternation in original).

Moreover, not all documents are "printed publications" under pre-AIA § 102(a) or (b).  "In order to qualify as a printed publication within the meaning of § 102, a reference 'must have been sufficiently accessible to the public interested in the art'" before the critical date.  *In re Lister*, 583 F.3d 1307, 1311 (Fed. Cir. 2009) (citing *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989)).

"'[P]ublic accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication' . . . ." *In re Hall*, 781 F.2d 897, 897-899 (Fed. Cir. 1986). "A reference will be considered publicly accessible if it was 'disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it.'" *Blue Calypso, LLC v. Groupon, Inc.,* 815 F.3d 1331, 1347-51 (Fed. Cir. 2016) (citation omitted); *see also In re Wyer*, 655 F.2d 221, 226 (CCPA 1981). Conversely, limited distribution may not amount to statutory "publication" unless the material is so situated that "anyone who chooses may avail himself of the information it contains." *In re Bayer*, 568 F.2d 1357, 1360, 1362 (CCPA 1978) (citation omitted). Such limitations ensure that courts do not "depart from what it means to *publish* something." *Samsung Elecs. Co., Ltd. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1372 (Fed. Cir. 2019) (emphasis in original); *see also Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 773 (Fed. Cir. 2018).

"A work of public character is such a book or other printed document as is intended and employed for the communication of ideas to persons in general, *as distinguished from particular individuals*. Private communications, although printed, do not come under this description, whether designed for the use of single persons or of a few restricted groups of persons." *Bayer*, 568 F.2d at 1360 (citation omitted; emphasis added); *see also Samsung*, 929 F.3d at 1375 (expressing reluctance to assume email should be treated the same as public disclosure and therefore not finding publicly accessibility). Courts use the word "'disseminate' in its literal sense, i.e. 'make widespread' or 'to foster general knowledge of[]'" rather than in the narrower sense, which merely "requires distribution of reproductions or photocopies." *In re Klopfenstein*, 380 F.3d 1345, 1348 n.3 (Fed. Cir. 2004) (citation omitted). Thus, limited or isolated distributions or disseminations are insufficient to establish that a reference was a "printed publication", particularly

where the document was restricted. *Cordis Corp. v. Boston Scientific Corp.,* 561 F.3d 1319, 1333-35 (Fed. Cir. 2009) ("agreement of confidentiality may defeat a finding of public accessibility."); *N. Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 936-37 (Fed. Cir. 1990) (documents stating "Reproduction or further dissemination is not authorized" not "printed publications"); *Badowski v. U.S.*, 164 F.Supp. 252, 255-56 (C. Cl. 1958) (calling a document a printed publication that could not be found in a library or the like for which defendant had to resort to a diplomatic request to obtain "border[ed] on the ridiculous"); *Allied Tube and Conduit Corp. v. John Maneely Co.*, 125 F. Supp. 2d 987, 990 (D. Ariz. 2000) (letter sent to distributors rather than end users and marked confidential was not accessible to the interested public and did not constitute a publication); *Goss Int'l Americas, Inc. v. Graphic Mgmt. Assocs., Inc.*, 739 F. Supp. 2d 1089, 1119-20 (N.D. Ill. 2010) (manual not a printed publication because at most fifteen customers received it and it bore a notice prohibiting copying or distribution).

### 3. Obviousness

Patent claims must have been non-obvious "at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103 (pre-AIA); *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1 (1966).  Invalidity defenses require "some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (citation omitted).  Courts must avoid "hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning." *Id.* at 421; *see also Graham*, 383 U.S. at 36.  "[A] patent . . . is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art."  *KSR*, 550 U.S. at 418; *see also ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed. Cir. 1984); *Belden Inc. v. Berk-Tek LLC,* 805 F.3d 1064, 1073 (Fed. Cir. 2015).  "[R]eferences to 'common sense'—whether to supply a motivation to combine or a missing limitation—cannot be

used as a wholesale substitute for reasoned analysis and evidentiary support, especially when dealing with a limitation missing from the prior art references specified." *Arendi SARL v. Apple Inc.*, 832 F.3d 1355, 1362-63 (Fed. Cir. 2016); *see also In re Van Os*, 844 F.3d 1359, 1361 (Fed. Cir. 2017); *Impax Labs. Inc. v. Lannett Holdings Inc.*, 893 F.3d 1372, 1380 (Fed. Cir. 2018). Objective indicia of non-obviousness, (secondary considerations) are also relevant. *Graham*, 383 U.S. at 36; *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983).

### 4. Patent "Enablement" and "Written Description" Disclosure Requirements

Section 112 of the patent laws sets forth enablement and written description requirements. The test for enablement is whether one reasonably skilled in the art could make or use the invention from the disclosures in the patent coupled with information known in the art without undue experimentation. *United States v. Telectronics, Inc.,* 857 F.2d 778, 785 (Fed. Circ. 1988) (citations omitted). This assessment depends on the predictability of the technological art involved. As long as the specification discloses at least one way of making and using the claimed invention that bears a reasonable correlation to the entire scope of the claim, then the enablement requirement of § 112 is satisfied. *In re Fisher*, 427 F.2d 833, 839 (CCPA 1970); *Engel Inds., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1533 (Fed. Cir. 1991). Disclosure of even a single species can enable a genus claim in a predictable art (such as in the mechanical or electrical arts). *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987) (citations omitted), *cert. denied,* 484 U.S. 954 (1987); *see also* MPEP § 2164.03 (less information needs disclosure in the predicable arts).

The written description requirement has a similar standard: "disclosure of a single species within a genus may be enough support for a claim directed to the genus." *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1124-26 (Fed. Cir. 2004); *see also Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (*en banc*) ("written description and enablement often rise and fall together"); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 1000 (Fed. Cir. 2000)

("written description questions are intensely factual, and should be dealt with on a case-by-case basis"). "[T]hat a claim may be broader than the specific embodiment disclosed in a specification is in itself of no moment." *In re Rasmussen*, 650 F.2d 1212, 1215 (CCPA 1981) *accord Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1371 (Fed. Cir. 2009); *see also Ariad*, 598 F.3d at 1351; *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1352 (Fed. Cir. 2011).

No particular form of "written description" disclosure is required. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1321 (Fed. Cir. 2003); *see also Ariad*, 598 F.3d at 1352 (specification need not recite the claimed invention *in haec verba*). Even "drawings alone may provide a 'written description' of an invention as required by § 112." *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1565 (Fed. Cir. 1991); *Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1361-64 (Fed. Cir. 2018) ("The written description does not require that every claimed element be illustrated in the figures, particularly in predictable arts").

### 5.  Priority to Provisional Patent Applications

Nonprovisional patent applications can claim priority to the filing date of an earlier provisional patent application ("PPA"), and **a later nonprovisional**

> **application** for patent filed . . . **for an invention disclosed** in the manner provided by section 112(a) (other than the requirement to disclose the best mode) **in a [prior] provisional application** filed under section 111(b) . . . , **shall have the same effect**, as to such invention, **as though filed on the date of the [earlier] provisional application** filed under section 111(b) . . . .

35 U.S.C. § 119(e)(1) (emphasis added); *see also* 37 C.F.R. §§ 1.9(a)(2) and 1.53(c); 35 U.S.C. § 120 (non-provisional priority). Priority to the PPA filing date is secured if a person of ordinary skill in the art can recognize support in the PPA's disclosure for the subject matter claimed in the later nonprovisional. *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 993 (Fed. Cir. 1999); *New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002).

### V.  ARGUMENTS

A.     **Global's Accused NexGen 3000 Product Infringes Each of the Patents-in-Suit**

1.     **Claims 1, 4-19, 21 and 22 of the '338 Patent are Directly, Literally Infringed**

Global's Accused Product meets claims 1, 4-19, 21 and 22 of the '338 Patent, as construed by the Court, and therefore infringes those claims.  (SOF 177, 178, 185-187).  35 U.S.C. § 271(a); *Ethicon*, 149 F.3d at 1315.  The presence of all limitations of the Asserted Claims in the Accused Product is detailed in Sudenga's Amended Infringement Contentions, which annotate various images of the Accused Product to identify relevant features.[9]  (Ex. 5; SOF 187).



(Ex. 5; *see also* Ex. 9; Ex. L; Ex. AR)

For instance, the accused NexGen 3000 product includes "a pivot stand" or "pivot pipe," "a collector ring having a first stationary portion and a second rotatable portion, wherein the stationary portion is attached to the pivot pipe [or pivot stand] above the floor grate," "a linear conveyor" (in the form of an auger with flighting), a "drive unit," and "a housing covering at least a top of the collector ring" as recited by independent claims 1, 15, and 19.  (emphasis added) (SOF 185, 187).  A sales brochure specifically mentions that the Accused Product has an "above floor

---

[9] Although the online video of the Accused Product cited in Sudenga's Infringement Contentions has been taken down by Global, other videos show its operation in a grain bin.  Denis Catalan, "NexGen 3150 w Tru Klean 1st Pass" *at* <https://www.youtube.com/watch?v=8kOzuvIdRm0> (Sept. 12, 2018); Denis Catalan, "NexGen 3150 w Tru Klean 2nd Pass" *at* <https://www.youtube.com/watch?v=XennkOShyPk> (Sept. 12, 2018).  (*See* Ex. BK).

Electric Slip Ring." (Ex. AR). The Court construed the term "collector ring" as "[a]n electromechanical device also called a 'slip ring' that allows the transmission of power and/or electrical signals from a stationary to a rotating structure. Further, a 'housing' recited in the claims of the asserted patents is separate from a casing, enclosure, or the like that, if present, is not part of the recited 'collector ring' itself." (SOF 148). The Court also construed "linear conveyor" as "[a] mechanism for moving solid material, including an auger with flighting, . . . or the like." (Id.). The Accused Product reads on those claim limitations as construed. (SOF 177-178).

Global's prior motion for partial summary judgment did <u>not</u> seek summary judgment of noninfringement of the '338 Patent. (SOF 152, 153; *but see* Ex. AT, p. 3).

### 2.   Claims 1, 6-8, 10 and 11 of the '001 Patent are Directly, Literally Infringed

Global's Accused Product meets claims 1, 6-8, 10 and 11 of the '001 Patent, as construed by the Court, and therefore infringes those claims. (SOF 177, 178, 183, 184, 187). 35 U.S.C. § 271(a); *Ethicon*, 149 F.3d at 1315. The presence of all the limitations of the Asserted Claims in the Accused Product is shown in detail in Sudenga's Amended Infringement Contentions, which reproduce various drawings from the Accused Product's manual and identify relevant features with annotations.[10]   (Ex. 5; SOF 187). For instance, the accused NexGen 3000 product includes "a pivot pipe," "a collector ring having a first stationary portion and a second rotatable portion, wherein the stationary portion is attached to the pivot pipe above the floor grate," "a sweep mechanism" (in the form of an auger with flighting), "a first drive unit," and "a housing surrounding the collector ring" as recited by independent claim 1. (SOF 183, 187). The Court

---

[10] Although the online video of the Accused Product cited in Sudenga's Original and Amended Infringement Contentions has been taken down by Global, other online videos show operation of the Accused Product inside a grain bin. Denis Catalan, "NexGen 3150 w Tru Klean 1st Pass" *at* <https://www.youtube.com/watch?v=8kOzuvIdRm0> (Sept. 12, 2018) and Denis Catalan, "NexGen 3150 w Tru Klean 2nd Pass" *at* <https://www.youtube.com/watch?v=XennkOShyPk> (Sept. 12, 2018). (*See* Ex. BK).

construed "sweep mechanism" the same as the term "linear conveyor" (in the '338 Patent), as "[a] mechanism for moving solid material, including an auger with flighting, a chain with paddles, a belt, a cleated belt, or the like."  (SOF 148).  As another example, while Global has formally contended that the Accused Product does not have a "peaked top cover" as recited by claim 6, (Ex. AT, p. 3), Global's own engineering staff has acknowledged there is a "peak of the cover" in the part of the Accused Product "where the slip ring would sit."  (SOF 182).

Global's prior motion for partial summary judgment did not seek summary judgment of noninfringement of the '001 Patent.  (ECF 118, 119; but see Ex. AT, pp. 2-3).

### 3.   Claims 1, 6 and 8 of the '823 Patent are Directly, Literally Infringed

Global's Accused Product meets claims 1, 6, and 8 of the '823 Patent, as construed by the Court, and therefore infringes those claims.  (SOF 136, 137, 177-181, 187).  35 U.S.C. § 271(a); Ethicon, 149 F.3d at 1315.  For instance, the accused NexGen 3000 product includes "a pivot stand attached to a top surface of the floor grate," "a collector ring having a first stationary portion and a second rotatable portion, wherein the stationary portion is attached to the pivot stand above the floor grate," and "a housing surrounding the collector ring," in which "the housing is attached to a drive unit on one side and to an auger section on another side" as recited by independent claim 1.  (SOF 136-144, 179, 187; Ex. 5).

During claim construction, Sudenga argued that "attached to a top surface" is not limited to being "attached [exclusively] to a top surface," "attached to a top surface [with nothing in between]," "[fixedly] attached to a top surface," or the like, and "does not limit the objects that are attached (that is, the 'pivot stand' and 'top surface of the floor grate') to being single-piece objects—as opposed to either or both attached objects potentially being multi-piece assemblies." (ECF 77, p. 24).  The Court agreed.  (ECF 102, p.13).  The Court further cited precedent holding that the transitional phrase "comprising" used in claim 1 does not preclude the presence of

additional, unclaimed elements.  (ECF 102, p.13, n.1).  Sudenga had warned that Global was "attempt[ing] to make the entirely irrelevant argument that their infringing product contains an *additional* attachment."  (ECF. No. 77, pp. 28-29 and n.9).  Despite the Court's claim construction ruling, Global has continued to rely on the same arguments the Court previously rejected.

Global's brief on its own summary judgment motion only argued that the Accused Product lacked "a pivot stand attached to a top surface of the floor grate" and made no arguments that any other limitations of claim 1 are missing.  (ECF 119, pp. 6-10).  Global takes the position that the "bottom mount" flange of the Accused Product—a separate piece from the cylindrical "mount tube"—creates an attachment to the floor grate.  (SOF 138, 139).  By making this argument, Global conceded that the claimed "pivot stand" need not be a single piece and can be a multi-piece assembly.  (Id.).  Where the parties differ is that Global argues that the bottom mount flange is the *only* pivot stand attachment to the floor grate whereas Sudenga has consistently alleged infringement based on the NexGen 3000 product's *other* attachment provided where the "retainer, top bearing" attaches the (multi-piece) pivot stand to a "top surface of the floor grate".  (*Contrast* SOF 140-144 *with* SOF 26, 27).  Global wails that Sudenga's infringement contentions on this point were "vague and unclear", (ECF 132, response to SOF 144), though in the weeks immediately following service of Sudenga's original invalidity contentions one of Global's engineers specifically circled the "Retainer, Top Bearing" in a drawing of center well components on a page from the manual for the accused NexGen 3000 product that show that part attached to the top surface of the floor grate.  (SOF 180; *see also* SOF 68; 140-144).  This reveals the dubiousness of Global's noninfringement arguments, which merely try to avoid addressing Sudenga's actual infringement contentions.  The Accused Product has two pivot stand attachments and the one to the top surface of the floor grate meets the "attached to the a top surface" limitation

of claim 1, in the sense of being "joined, fastened, or connected" to the top surface of the floor grate of a center well.  (SOF 140, 143; *see also* SOF 177, 178, 187).

### B.   Global's Infringement Was Willful

A finding of willfulness entitles Sudenga to a subsequent award of enhanced damages.  35 U.S.C. § 284.  Willfulness is based on the totality of the circumstances, under a preponderance of the evidence standard, and an infringer's subjective bad faith alone may support enhanced damages.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. ___, 136 S. Ct. 1923 (2016); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992) (non-exclusive list of willfulness factors).

Here, one of Global's engineers photographed Sudenga's D150 bin sweep (which is covered by the Patents-in-Suit) at a trade show in February 2013 while that same engineer was the "lead person" developing Global's Accused Product.  (SOF 135, 188).  Global's engineers had in their records copies of Sudenga advertisements dated from 2012 that identified collector ring features of certain Sudenga bin sweep products as patent pending, and in May 2014 a Global salesperson even received a copy of a Sudenga advertisement that identified collector ring features as patented.  (Id.; SOF 189).  Global then commercially released the Accused Product later in 2014.  (SOF 190).  Sudenga affirmatively contacted Global regarding infringement in January 2016, placing Global on actual notice of at least the '823 Patent and the '001 Patent.  (SOF 164).  Despite arguing to Sudenga that there was no infringement, Global's agents privately looked for possible product re-designs of the Accused Product and privately acknowledged that ████████ ████████████████████  (SOF 192, 193, 195-196).  Global did not conduct a patent freedom-to-operate or invalidity search against the Patents-in-Suit until April 2017, meaning it could not have formed any belief in invalidity before then.  (SOF 191, 194).  Global is not relying on an advice of counsel defense in the present suit.  (SOF 151).

But there is more.  Global was acquired by AGI in April 2017, and as part of that acquisition

███████████████████████████████████████████████████████████████████████████

██████████████████████████████████ (SOF 167, 193).  ██████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

█████████████████████████████████████ (Id.).  ███████████████████████████

Global's new owners could put forward flimsy invalidity defenses without much concern for the

consequences.  Global's new management did not need to subjectively believe in their defenses to

avoid ultimate liability.  (*See* SOF 192, 196).  This is how the present litigation has played out; as

the USPTO considered the references cited by Global and still found Sudenga's claimed inventions

patentable, Global has merely disregarded those findings and stuck with untenable and weak

invalidity defenses in subjective bad faith. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340

(Fed. Cir. 2016); (SOF 89, 204, 205).  Undisputable evidence thus shows AGI controlled Global's

ongoing sales of the Accused Product with deliberate, flagrant contempt for Sudenga's patents,

showing culpable behavior that constitutes willful infringement.  (SOF 167, 188, 191-196).

### C.      Global Cannot Establish by Clear & Convincing Evidence That Any Asserted Claims of the Patents-in-Suit are Invalid

Global's invalidity arguments fail to overcome the statutory presumption of validity by the

requisite clear and convincing evidence.  (SOF 77, 212, 213).  Global (a) disregards or second-

guesses the USPTO's considered judgment of the same or comparable evidence under the

USPTO's lower standard of proof, (b) relies on materials that do not constitute prior art, and (c)

attempts to portray Sudenga's priority provisional patent application (PPA) as practically

worthless in a manner contrary to law and fact.  For example, the inadequacy of Global's evidence

and arguments is highlighted by the fact that the USPTO already considered all but one of the

15

references cited by Global when it granted the '338 Patent—along with an early invalidity claim chart prepared by Global's attorneys—and granted that patent over *all* of that art.[11]  (SOF 86, 204). But the USPTO was correct and Global has not established any USPTO error—Global simply doesn't accept the conclusion.  (SOF 89; Ex. AU at ¶ 46).  Global asserts the single "new" reference Neuero is "interchangeable" with Chief, which was previously considered by the USPTO, meaning Neuero changes nothing with respect to the USPTO's examinations of other art that was at least as relevant. (SOF 55, 86-88, 125).  *RCA*, 293 U.S. at 7; *Ingersoll-Rand*, 474 F.2d at 496.

### 1.   The Kaskie Bros. Sale is Not Prior Art Against the Asserted Claims Because There is Written Description Support in Sudenga's Provisional Application

Sudenga's PPA fully supports all of the asserted claims of the Patents-in-Suit, which are each entitled to claim priority to the PPA filing date.  (SOF 74-77).  The subject matter of all the asserted claims falls within the so-called predictable arts.  (SOF 70).  *See Fisher*, 427 F.2d at 839. It is well-settled that disclosure of even single species within a genus can support for a claim directed to the genus in the predictable arts.  *Bilstad*, 386 F.3d at 1124-26; *Martek*, 579 F.3d at 1371.[12]  Because the asserted claims are adequately supported by the PPA, they are each entitled to claim priority to the February 19, 2020 PPA filing date.  (SOF 77).  This means the "critical date" for the on-sale bar under pre-AIA 35 U.S.C. § 102(b) is February 19, 2009.  Because Sudenga's September 2009 sale of a product covered by the Patents-in-Suit to Kaskie Bros. was *after* the critical date, it falls within the one-year statutory grace period under pre-AIA 35 U.S.C. § 102(b) and is *not* prior art against any asserted claims.  (SOF 84).  Global's "written description" invalidity contentions are merely self-serving, taking an unreasonably narrow view of the figures

---

[11] The USPTO granted Sudenga's '989 Patent after considering Global's original invalidity contentions, under a preponderance of the evidence.  (SOF 87-88, 165, 205).  MPEP § 706(I).

[12] Voluntary dismissal of certain previously-asserted claims resolved this matter.  (*See* SOF 174).

and text of Sudenga's PPA and failing to apply the knowledge of a person of ordinary skill in the art.  (SOF 30, 31, 69, 70, 72-76, 171, 172).

For example, Sudenga's PPA disclosed a pivot pipe or stand "extending above a top surface of the floor grate" as recited in asserted claims of the '001 Patent and '338 Patent.  (SOF 76, 77; Ex. 8).  It is well established that even figures alone can provide "written description", and FIG. 2 of the Sudenga PPA shows a pivot pipe or stand "extending above a top surface of the floor grate." *Vas-Cath*, 935 F.2d at 1565.  A person of ordinary skill could recognize support in the PPA for the inventor's possession of each of the asserted claims, even though the wording differs, particularly when viewing the drawings (including text in those drawings) in conjunction with the entire text of the specification, and would not find any disclaimer of scope.  *Ariad*, 598 F.3d at 1352 (no *in haec verba* requirement); *Johnson,* 175 F.3d at 992-93; (SOF 69, 70, 72, 73, 76, 77; Ex. B at ¶¶ 16, 17; ECF 102, pp. 12-16).   Similarly, the genus terms "sweep mechanism" and "linear conveyor" (in claims of the '001 and '338 Patents) are also both supported by disclosure in Sudenga's PPA.  (SOF 75, 77).  It is apparent to persons of ordinary skill that the PPA disclosure as a whole does not disclaim any scope and does *not* ever state that an auger embodiment is essential or critical.  (Ex. 8, ¶ 2 and FIGS. 1 and 2; Ex. B at ¶¶ 18, 19).  Due to the predictability of the art, persons of ordinary skill would have understood an auger as merely one species within the genus of known sweep mechanisms and linear conveyors usable with bin sweeps to move solid materials.  (SOF 69, 70, 72, 74, 75, 77; Ex. B at ¶ 20).

### 2.   Global Cannot Establish Invalidity by Clear & Convincing Evidence Based on Patent and Alleged "Printed Publication" References

#### a.   The Francis Reference in View of Additional References

The closest prior art of record is Francis (U.S. Pat. No. 3,449,840), which disclosed a bin sweep having a collector ring (52/53) that is exposed to the contents of the bin.  (Ex. R at FIG. 5;

Ex. B at ¶ 52; Ex. AU at ¶¶ 12-13). Francis was specifically cited by the USPTO patent examiner who concluded when examining the application for the '001 Patent that "the prior art does not include a collector ring in combination with a housing surrounding the collector ring . . . as recited in the claims." (SOF 206). After considering Francis and other art during examination of subsequent family-related Sudenga patents—namely the '338 Patent and the '889 Patent—the USPTO similarly concluded that "the prior art does not include . . . a housing which covers at least a top of the collector ring . . . as recited in the claims." (SOF 86, 88, 204, 205). Likewise, Francis does not disclose "a housing surrounding the collector ring" as recited by Asserted Claims of the '823 Patent. (SOF 206, 207). This is consistent with this Court's claim construction ruling that "a 'housing' recited in the claims of the asserted patents is separate from a casing, enclosure, or the like that, if present, is not part of the recited 'collector ring' itself." (SOF 148).

Global's Amended Appendix F acknowledged that Francis fails to anticipate the Asserted Claims but resorts to arguments that Asserted Claims are obvious in view of Duffy, Shivvers, Glenn, Cook, Meyer, or Lizambard (and Sudenga I and II for certain dependent claims).[13] (Ex. AE). Whether an ordinarily skilled artisan would have been motivated to modify the teachings of a reference is a question of fact. *WBIP*, 829 F.3d at 1327 (citations omitted). Global's Amended Appendix F invalidity claim chart makes only conclusory, unsupported assertions regarding an alleged motivation to modify references cited against claims of the Patents-in-Suit. (Ex. AE). Global's obviousness arguments represent impermissible hindsight bias, as a reconstruction of Sudenga's patented inventions based on Sudenga's own disclosures rather than the knowledge available in the prior art. (SOF 207). Recognizing a problem is not the same as providing a solution, and even defining the problem in terms of its solution reveals improper hindsight. *In re*

_____

[13] Global's reliance on Francis in view of Lizambard and Meyer is unclear. (Ex. 5, pp. 70-76).

*Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006); *In re Linnert*, 309 F.2d 498, 502-03 (CCPA 1962).  It was Sudenga's inventor who, as part of his inventions as a whole, addressed the grain pressure within a bin that can make an exposed and unhoused collector ring vulnerable, despite its explosionproof casing.  (SOF 127, 207).  Indeed, other art like Chief (discussed below) shows that bin sweep products left the collector ring exposed to the contents of a bin just as in Francis.  (Ex. AU at ¶ 14).  Global's amended contentions do not identify a "collector ring" in any of the secondary references (Cook, Glenn, Shivvers, Duffy, and possibly Meyer or Lizambard), and therefore fail to identify "a housing surrounding the collector ring" as claimed.  (Ex. AU at ¶ 14).  References like Cook, Glenn, Shivvers, etc. deal with mechanically geared bin sweeps that lack any collector ring or any teachings about problems arising with the use of collector rings in bins.  Although Duffy, Cook, and Meyer were not considered by the USPTO with respect to the Patents-in-Suit, those references are merely cumulative with and no more relevant than prior art already considered by the USPTO, such as Glenn, Shivvers, and Lizambard.[14]  (Ex. AU at ¶¶ 12, 46, 47).

The USPTO correctly granted Sudenga patents over Francis, etc. and Global points to no errors in those determinations.  *Am. Hoist & Derrick*, 725 F.2d at 1360; (Ex. AU at ¶ 46).  Global's amended invalidity contentions and associated defenses based on Francis should be rejected.  Global has cited numerous additional references it alleges qualify as prior art but none are more relevant than Francis with regard to a "housing" recited in the Asserted Claims. (SOF 204-206).

### b.  The Chief or Neuero References in View of Lizambard Etc., and Lizambard in View of Additional References

Chief and Lizambard were previously considered during examination of the '338 Patent, along with a claim chart prepared by Global's attorneys, and that patent was determined to be

---

[14] But the USPTO considered Duffy, Cook, Meyer, and all the other cited references, as well as Global's original Invalidity Contentions, during examination of the '989 Patent. (SOF 205).

patentable over those references.  (SOF 86, 204).  Global does not establish any error in that prior USPTO determination.  (*See* SOF 89; Ex. AU at ¶ 46).  Rather, Global relies on impermissible hindsight bias based on Sudenga's own disclosures, or at most merely self-serving conclusory statements that are insufficient. (SOF 122-127, 208, 209, 212).

Global had to amend its invalidity contentions based on Chief after the Court rejected Global's claim construction arguments about the term "collector ring".  (ECF 102 at pp. 6,9,11-12; SOF 200).  Global now concedes that Chief lacks the claimed "housing" but argues a modification of Chief that combines the teachings of Lizambard, which lacks any disclosure of a "collector ring" (or slip ring).  (SOF 46-51, 199).  Global also makes alternate invalidity arguments based on Chief, Lizambard, or Neuero in view of other art discussed above with respect to Francis. (SOF 199, 208, 209).  But the USPTO previously considered Chief, Lizambard, etc. *as well as a claim chart from Global*.  *RCA*, 293 U.S. at 7 ("A patent regularly issued, and <u>even more obviously a patent issued after a hearing of all the rival claimants</u>, is presumed to be valid until the presumption has been overcome by convincing evidence of error.") (emphasis added); (SOF 86, 88, 204, 205).  Lizambard fails to disclose any "collector ring" whatsoever and therefore further fails to teach or suggest any claimed elements or relationships that require such a "collector ring". (SOF 114-116).  The cited art falls short because both Chief and Lizambard disclose a cover for *a drive unit* but neither discloses "a housing covering at least a top *of the collector ring*" or "a housing surrounding *the collector ring*" as claimed.  (SOF 86, 88, 114-127, 203, 208, 209, 212).

A person of ordinary skill considering Chief in view of Lizambard would have had no reason to modify both Chief and Lizambard to arrive at a configuration not taught by either.  (SOF 124, 126); *Arendi*, 832 F.3d at 1362-63; *Van Os*, 844 F.3d at 1361.  Global's expert has said, "For grain handling [the collector ring] device would need to be explosion proof and I did not see any

mention of that in the patent.  I[t] simply says a housing."  (SOF 123).  The explosionproof casing of the collector ring itself *already protects against grain dust infiltration* and, therefore, the prior art does <u>not</u> suggest a need for the claimed (separate) housing to prevent dust infiltration as Global's expert recently opined (contrary to his earlier statement).  (SOF 122, 126, 127, 208; Ex. 24 at ¶¶ 18, 19); *see Ex parte Böger,* No. 2017-001586, at *4 (PTAB, Aug. 29, 2017).  Global's arguments using Lizambard as the primary reference have even less support.  (SOF 209).

Global further argues that Neuero is "interchangeable" with Chief; thus, the USPTO has already considered materials that are as close or closer to the claimed subject matter and Neuero raises no material new issues of validity.  (SOF 71, 79-84, 86, 88, 121, 125, 204, 205; Ex. AU at ¶¶ 12, 14, 46); *see Ingersoll-Rand*, 474 F.2d at 496.  Even assuming *arguendo* that Neuero is a "printed publication", Global lacks evidence to establish that it was published before the critical date of invention by Sudenga's inventor or more than a year before the filing date of Sudenga's PPA.  *Hybritech,* 802 F.2d at 1380.  The alleged November 30, 2009 publication date is simply not old enough.[15]  It is surprising that Global relied on Neuero at all.

### c.  The Cantenot Reference (Plus Sudenga I and II)

Cantenot was previously considered by the USPTO during examination of the '338 Patent, as were Sudenga I and II during examination of all the Patents-in-Suit.  (SOF 86, 204).[16]  Just as the USPTO previously concluded, Cantenot fails to anticipate each and every limitation of the asserted claims of each of the Patents-in-Suit.  (Id.; SOF 210, 212).  The reasons Global's Amended Invalidity Contentions based on Cantenot are deficient are difficult to state succinctly, given the

---

[15] Perhaps Neuero was working on similar subject matter around the same time, in a concealed manner, but the pre-AIA patent laws still deem Mr. Hoogestraat to be the inventor based on the § 102 critical dates.  *BASF,* 955 F.3d 958; *see also Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1460 (Fed. Cir. 1984); 35 U.S.C. § 135 (pre-AIA).
[16] Moreover, Cantenot, Sudenga I and II, and Global's original Invalidity Contentions were considered by the USPTO during examination of the '989 Patent.  (SOF 88, 165, 205).

confusing, vague, and frequently inconsistent content of those contentions.  But, for instance, Global's Cantenot contentions cite to multiple, different embodiments.  (SOF 210).  This is insufficient. *Net MoneyIN*, 545 F.3d at 1371 (anticipation is not proven by multiple, distinct teachings that the artisan might somehow combine to achieve the claimed invention).  Global's contentions also mostly cite to <u>hydraulic</u> bin sweep components of Cantenot, despite the Asserted Claims being directed to bin sweeps with collector rings (that is, <u>electrically-powered</u> sweeps), and cite to components that are explicitly described by Cantenot as being "fast" (that is, rotationally fixed) when the Asserted Claims instead recite rotational relationships.  (SOF 148, 210).  Global's contentions also fail to make sufficient allegations about obviousness, including why a person of ordinary skill would have been motivated to combine or modify the cited embodiments and/or references as suggested by Global.  (SOF 210).

### d.  The Morillon Reference (Plus Sudenga I and II)

Global's invalidity contentions based on Morillon are insufficient for two reasons, either of which provides grounds to rule in favor of Sudenga.  First, Morillon is not prior art against the Asserted Claims because it was not generally publicly available before the critical date and was therefore not a "printed publication" under pre-AIA 35 U.S.C. § 102(a) or (b). (SOF 107).  Second, Global fails to establish that the substantive content of Morillon renders any Asserted Claims invalid.  (SOF 108).  Morillon contains restrictions on distribution, there is no credible evidence of its dissemination to make it generally publicly accessible prior to the critical date, and, further, its substantive contents are inadequate to invalidate any Asserted Claims—the USPTO has indeed already considered it.  (SOF 86, 88, 107, 108; Ex. 15, pp. 36-51; Ex. B at ¶¶26-30).

### (1)   The Pantalena Declaration Does Not Establish Morillon as a "Printed Publication"

Global was unable to find any generally publicly available copies of Morillon and resorted to a special request through a sister company (Framé) to obtain non-public email materials, and,

based upon those private communications, Global argues that a copy of Morillon sent by email between a manufacturer and dealer/distributor (both located outside this country) bearing restrictions/protective measures is a "printed publication".  (SOF 90-107; Ex. BH).   This is contrary to applicable law—and borders on the ridiculous.  *See Badowski*, 164 F.Supp. at 255-56. Global relies on the Pantalena Declaration to try to establish public availability, in the face of facts and legal authority that dictate the opposite conclusion.  (SOF 90-107).  Morillon was simply <u>not</u> generally publicly available before the critical date and is <u>not</u> "printed publication" prior art.

The presence of "protective measures" such as a simple disclaimer that no copying of the information will be allowed or countenanced can be determinative. *Klopfenstein*, 380 F.3d at 1351; *accord SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1203 (Fed. Cir. 2008).  For instance, in *Northern Telecom,* documents that contained the legend "Reproduction or further dissemination is not authorized" were not "printed publications" and thus did not qualify as prior art.  908 F.2d at 936-37; *see also Globe Linings, Inc. v. City of Corvalis,* 555 F.2d 727, 729-30 (9th Cir. 1977) (report carrying restriction was not public); *Klopfenstein*, 380 F.3d at 1351; *Freedom Wireless, Inc v. Boston Commc'ns Group, Inc.*, 390 F. Supp. 2d 63, 88-89 (D.Mass. 2005) (restrictive legend is probative evidence document is not publicly available).

Here, Global has *admitted* that multiple pages of Morillon state that "<u>it mustn't be copied or published</u> without our approval." (emphasis added) (SOF 93).  Such a notice is a straightforward protective measure that informed individuals receiving the document that copying and publication were not permitted.[17]  (SOF 93, 96, 107).  Morillon is therefore not a "printed publication".  (SOF

---

[17] Paragraph 8 of the Pantalena Decl. makes inadmissible statements that are hearsay, not based on personal knowledge, and constitute expert testimony by a lay witness.  In particular, Mr. Pantalena makes statements about the practices of Morillon, a company he was never employed by, and makes inadmissible statements about what was allegedly "common" that are extrapolations only permissible by an expert and/or are hearsay. (*Contrast* Ex. B at ¶¶ 22-24).

107).  The e-mail chain attached to the Pantalena Declaration does not include a request or grant of authorization to publicly disseminate or publish the Morillon reference.  (SOF 97).  Also, the Pantalena Declaration is from the alleged receiving party and no testimony is provided from the disclosing party whose document contained the restriction—the Pantalena Declaration and its email attachment contains hearsay in this regard.  Moreover, the email chain (to which Morillon was attached) included multiple confidentiality notices.  (SOF 103, 104).  This notice, coupled with the ones on the attached manual, created the reasonable impression that the communications and all file attachments would be understood to be communicated confidentially between the sending/disclosing and receiving parties.  (SOF 93, 96, 97, 103, 104, 107).  Cases with similar facts have found that such materials were not "printed publications".  *Allied Tube*, 125 F. Supp. 2d at 990 (letter sent to distributors rather than end users and marked confidential was not accessible to the interested public and was not a publication); *CNET Networks, Inc. v. Etilize, Inc.*, 584 F. Supp.2d 1260, 1274 (N.D. Cal. 2008) (copyright dates and "statement that several other companies bought and used the Liaison software in 2000-2002 and that the Liaison CE User Guide was available with the software is uncorroborated testimony" insufficient to establish publication); *Goss Int'l*, 739 F. Supp. 2d at 1119-20 (manual with restrictive notice not a printed publication).

Additionally, dates in the Morillon document itself are not sufficient to establish publication,[18] particularly where, as here, they appear to be merely printing or creation dates and are not conventional markers of publication like library ISBNs.  *E.g., Open Text SA v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 4940798, at *7 (N.D. Cal. Aug. 19, 2015) (citation omitted).

---

[18] Sudenga also objects to such evidence as inadmissible hearsay.  *See Hilgraeve, Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964, 974–75 (E.D. Mich. 2003).

Furthermore, the Pantalena Declaration is unreliable, uncorroborated, and insufficient.[19] Mr. Pantalena claims that there were no restrictions on distribution despite Morillon stating in multiple places that "it mustn't be copied or published . . . ." (emphasis added) (SOF 93).  His recent declaration also alleges that he wanted a "digital copy for easier electronic dissemination" yet his attached email chain instead explicitly stated that he "wish[ed] to save a digital copy in our network for reference."  (SOF 102).  These are glaring contradictions.  His attached email chain from a decade earlier states nothing more than a desire for a dealer/distributor to have a copy of a document bearing a restriction on distribution or publication in order to "save" it in "our" local computer "network"—there is no mention of alleged further "dissemination" until Global's attorneys drafted a declaration with that wording a full decade later.  (SOF 93-104).  Also, the version of the email attached to his declaration differs from another version of record that includes a black bar at the top, suggesting possible redaction or alteration of the email chain.  (SOF 104).

Mr. Pantalena's declaration also contains inadmissible assertions, involving hearsay and/or a lack of personal knowledge.  (*See, e.g.,* SOF 32 response and SOF 98, 99, 101).  Moreover, the Pantelena Declaration makes assertions to which Sudenga objects as irrelevant when it attests to activities *outside this country* and attests to undated events without establishing that those events were old enough in relation to the critical date to be relevant to establishing a document as a prior art "printed publication".  (SOF 92, 98-101).  The absence of such dates is conspicuous.

To the extent that there are uncorroborated statements in the Pantalena Declaration those cannot be given any weight.  *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1217 (Fed. Cir. 2002).  This is important because commercial products and associated documentation can

---

[19] Mr. Pantalena resides abroad and has not been cross-examined.  Sudenga objects to admissibility of parts of his declaration.  (*See* ECF 126, response to SOF 32; SOF 98, 99, 101).

change over time,[20] MPEP § 608.01(v)(I) ("characteristics of a product may change from time to time and yet it may continue to be sold under the same mark or trade name") and (SOF 78-80; *see also* Ex. K, Attachment H2), and a witness can be tempted to "remember facts" to try to defeat another's patent. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). Vague and uncorroborated declaration statements are thus insufficient to attribute one version of a document to another point in time, such as to support other alleged distribution of materials not in evidence.

**(2)      Morillon's Substantive Disclosure Fails to Render Any Asserted Claims Invalid**

In the unlikely event that Morillon is found to be a "printed publication", its substantive contents still fail to establish invalidity of any claims by clear and convincing evidence. (SOF 108). The USPTO already considered Morillon. (SOF 86, 88). Indeed, the USPTO even considered claim charts prepared by Global's attorneys that highlighted allegedly relevant disclosures in Morillon and other references Global continues to rely on. (Id.; SOF 204, 205). Global has not established any error on the part of the USPTO as part of its burden on summary judgment. *Am. Hoist & Derrick*, 725 F.2d at 1360. Sudenga has also identified numerous deficiencies of Morillon. (Ex. 15, pp. 48-51; Ex. B at ¶¶ 25-33). It is well settled that anticipation requires that "<u>all of the elements and limitations</u> of the claim must be shown in a single prior reference, <u>arranged as in the claim</u>." *Karsten*, 242 F.3d at 1383 (emphasis added). It is <u>not</u> sufficient to merely point to isolated elements in a reference, the reference must further show those elements arranged in the manner required by the claim and not by distinct teachings as they might somehow be combined. *Net MoneyIN*, 545 F.3d at 1371. Global's arguments point to various things in Morillon and call them by the terms in the asserted claims but fail to establish that those

---

[20] For instance, Morillon includes a product photo that resembles the Chief reference, (*compare* Ex. 10, p. I-3 *with* SOF 44), suggesting that whatever Morillon might have sold commercially outside the USA (or disseminated written materials about) may have been unlike the specific materials Global and Mr. Pantalena now point to. (*See* SOF 92).

elements both meet the claim terms and are arranged in the manner claimed. Indeed, the photo reproduced at right from Morillon shows a pair of silver side walls *open to the front and above, <u>without any top</u>*, yet Global alleges that these mere sidewalls constitute "a housing <u>covering at least **a top** of the collector ring</u>" as recited by claims 1, 15, and 19 of the '338 Patent.[21] (SOF



*Morillon (Ex. 10, at GII0029307)*

109, 110).   When allowing the grant of the '338 Patent—and at the same time signing off that Morillon had been considered—the USPTO examiner stated, "<u>the prior art does not include</u> . . . <u>a housing which covers at least a top of the collector ring</u> . . . as recited in the claims." (SOF 86).[22] (emphasis added).   Global further conflates the "housing" and the "cover" recited as separate elements in the claims of the '338 Patent.   Global does not identify any "cover" in Morillon as something adjacent to the "housing", as recited in claims 21 and 22 of the '338 Patent, but rather identifies the same structure as allegedly satisfying both the separate "cover" and "housing" contrary to the claim recitations.   (SOF 111).   Differences like these explain why the USPTO granted the '338 Patent over Morillon, even after considering materials from Global.

Similar deficiencies are found in Global's arguments regarding claims of the '823 and '001 Patents, as noted by Sudenga when answering Global's Interrogatory No. 18; for example, Global fails to identify where or how Morillon allegedly shows or describes "a housing surrounding the

---

[21] Morillon at the top left of page I-3 also shows a photo of what appears to be a configuration like that of Chief and unlike any drawings specifically cited by Global.

[22] When considering Global's materials submitted in an information disclosure statement (IDS) after allowance of the Sudenga application, the USPTO examiner had the option to reopen prosecution if "the examiner determine[d] that reopening prosecution [wa]s necessary to address an item of information in the IDS." USPTO, "Quick Path Information Disclosure Statement (QPIDS) Pilot Program," 77 Fed. Reg. 27443 (May 10, 2012).   Moreover, during examination of the later '989 Patent, *after considering Morillon <u>and</u> Global's original invalidity contentions from the present suit*, the USPTO patent examiner again concluded, "the prior art does <u>not</u> include . . . <u>a housing which covers at least a top of the collector ring</u> . . . ." (SOF 88) (emphasis added).

collector ring" or that "the housing is attached [1] to a drive unit on one side and [2] to an auger section on another side" as claimed.  (SOF 112, 113).  Morillon lacks a housing "surrounding the collector ring" as recited in claims of the '823 and '001 Patents because the structure of Morillon that Global points to is open to the front and above, leaving the collector ring exposed to the contents of a bin.  (SOF. 109).  Moreover, with regard to the '823 Patent's limitation that "the housing is attached . . . to an auger section on another side" Global merely avoids reference to photos and drawings that show the auger being completely separate from the housing and attached only to a drive unit support.  (Ex. B at ¶ 29).  Under a *lower* burden of proof to reject claims as unpatentable,[23] the USPTO concluded that the '338 Patent was patentable over Morillon, and for the same or similar reasons all of the asserted claims of the Patents-in-Suit are valid over Morillon.  (SOF 86, 108-113; *see also* SOF 88).  Therefore, even considering the substance of Morillon, which is not a "printed publication", Global cannot establish invalidity by clear and convincing evidence.  (Id.; *see also* SOF 107).

### e.   The Denis II Reference (Plus Sudenga I and II)

Denis II lacks a "collector ring" as recited in the Asserted Claims, and further lacks any claimed elements or relationships that require such a "collector ring" such as the "housing" recited in the Asserted Claims. (SOF 211-212).  In this respect Denis II is much like Lizambard.  (Ex. AU at ¶ 43).  Global's Amended Invalidity Contentions are also inconsistent, identifying different structures as allegedly disclosing a given claim limitation, such as between claims 1 and 6 of the '823 Patent and claims 1 and 6 of the '001 Patent.  (Ex. AC).  The USPTO did consider Denis II and granted the '338 Patent (and the '989 Patent) over Denis II.  (SOF 86, 204, 205).  Denis II has no effect on validity.

---

[23] MPEP § 706(I) (patent examiners apply "preponderance of the evidence"); *see also In re Jung,* 637 F.3d 1356, 1362 (Fed. Cir. 2011); *Ex parte Albert*, 18 USPQ.2d 1325 (BPAI 1984).

### f.  The Denis I Reference

In its original Invalidity Contentions Global listed the publication date of Denis I ("Sweep Augers DNS & BM Sweeping Brush") as "Currently unknown" but then in its Amended Invalidity Contentions made a new contention that Denis I was allegedly published "Prior to 2010." (SOF 201). However, Global has not even attempted to put forward any evidence of publication of Denis I "Prior to 2010". (Id.). That is because *there is no such evidence*. (Id.) Denis I was not a "printed publication" that was generally publicly accessible before the critical date and therefore has no impact on the validity of any Asserted Claims. (Id.). The contents of Denis I are <u>irrelevant</u> because there is no evidence it was published long enough ago to qualify as prior art.[24]

### g.  Objective Indicia of Nonobviousness

Available evidence of so-called objective indicia of non-obviousness, also called secondary considerations, must be considered. *Graham*, 383 U.S. at 17-18,36; *Stratoflex*, 713 F.2d at 1538; *Transocean Offshore Deepwater Drilling Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012). Sudenga has such evidence, and presented arguments about some of it in its response to Global's motion for partial summary judgment. (ECF 126, pp. 26-27; SOF 135, 172, 189, 190). Though it is unlikely that the Court needs to rely on this secondary evidence due to the many deficiencies of the cited art and in Global's associated invalidity contentions.

## VI.  <u>DISMISSAL OF COUNTERCLAIM COUNT VII</u>

Global's Counterclaim Count VII should be dismissed for lack of Article III standing. As outlined above, Global should be found liable for (willful) infringement and its invalidity defenses rejected. This places Sudenga, not Global, in position to request an award of attorney's fees. This Court has held that § 285 fees are "a post-trial decision for the judge rather than an element of

---

[24] Anyway, the USPTO did consider Denis I and granted the '338 Patent (and the '989 Patent) over Denis I. (SOF 204, 205).

damages to be proved at trial" that are considered "only after a judgment regarding a substantive patent issue is entered" because § 285 fees are "not a separate, surviving and independent cause of action, but rather a corollary or ancillary issue which is dependent on the main action." *Elan Pharms., LLC v. Sexton*, 421 F. Supp. 3d 1119, 1125-27 (D.Kan. 2019) (citations omitted); FED. R. CIV. P. 54(d)(2).  This means Global lacks standing for Counterclaim Count VII, at least upon a summary judgment ruling for Sudenga's Counts I-III and against Counterclaim Counts I-VI.

## VII.    <u>CONCLUSION</u>

Global's accused NexGen 3000 product infringes at least one claim of each of the Patents-in-Suit and Global cannot establish by clear & convincing evidence any of its invalidity contentions.  There are no material disputed facts.  Therefore, the Court should grant summary judgment of infringement under Counts I-III of Sudenga's complaint and should rule against all of Global's noninfringement counterclaims (Counterclaim Counts I-III).  Global's infringement should also be found to be willful.  Further, the Court should conclude, like the USPTO, that the asserted claims are valid over all of Global's cited art and should therefore rule against all of Global's invalidity defenses and counterclaims (Counterclaim Counts IV-VI).  Sudenga's motion for summary judgment should thus be **granted**, leaving remedies to still be determined. Global's attorney's fees counterclaim (Counterclaim Count VII) should also be dismissed.

Dated:  July 1, 2020                          Respectfully Submitted,

By:    /s/ Michael Dodig

Austen Zuege (MN Bar No. 330,267)               Michael S. Dodig (D.Kan. Bar No. 16660)
  admitted *pro hac vice*                                      THE DODIG LAW FIRM, LLC
WESTMAN, CHAMPLIN & KOEHLER, PA    300 SW Main Street
121 South Eighth Street, Suite 1100                   Lee's Summit, MO  64063
Minneapolis, Minnesota 55402                        Telephone:     (816) 434-5313
Telephone: 612-334-3222                               Facsimile:      (816) 554-4551
Fax: 612-334-3312                                          E-Mail: Dodig@dodiglaw.com
E-mail: azuege@wck.com
**ATTORNEYS FOR PLAINTIFF SUDENGA INDUSTRIES, INCORPORATED**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing instrument was served via the court's ECF system on

July 1, 2020, upon all counsel of record.

By:  /s/ Michael Dodig

**Michael Dodig**